Kenneth F. NUCKOLS, Petitioner,

v.

The STATE of Oklahoma and James Saffle, Respondents.

No. PC–89–271.

Court of Criminal Appeals of Oklahoma.

Jan. 24, 1991.

Gary Peterson, Oklahoma City, for petitioner.

Robert H. Henry, Atty. Gen., Wellon B. Poe, Asst. Atty. Gen., Oklahoma City, for respondents.

## OPINION

LANE, Presiding Judge:

This case comes to us on remand from the United States District Court for the Western District of Oklahoma. Petitioner applied to that court for habeas corpus relief pursuant to 28 U.S.C. § 2254. After the request for the writ was filed, but before the federal court acted on the merits of the case, the United States Supreme Court handed down its decision in *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). Because the principals established in the *Cartwright* case were applicable to claims raised by Petitioner Nuckols, the federal district court directed Petitioner to exhaust those claims by filing a second Application for Post–Conviction Relief in the Oklahoma state court system. Petitioner filed the present action in the District Court of Pottawatomie County alleging that the jury was improperly instructed as to the consideration to be given to the aggravating circumstance "that the murder was especially heinous, atrocious or cruel" (hereinafter HAC) and that the jury was improperly instructed that sympathy could not enter into its second stage deliberations. Relief was denied by the trial court and Petitioner has perfected his appeal to this Court.

We will first consider Petitioner's claim that the aggravating circumstance found in his case was unconstitutionally applied, thus dictating modification of his sentence to life. Subsequent to the opinion in *Maynard v. Cartwright*, we undertook a detailed analysis of the principles espoused in that opinion as they relate to other cases where the same aggravating circumstance, HAC, was found to support the death penalty. *See Foster v. State*, 779 P.2d 591 (Okl.Cr.1989). In *Foster*, we recognized that the problems underlying the reversal of Cartwright's death sentence stemmed from the fact that the jury was given incomplete instructions. The instructions did not address the limiting factors previously adopted and mandated by this Court for use with the HAC circumstance. As was the case in *Foster*, we are not presented with that problem here.[1]

Of particular concern to the federal district court are the references to Petitioner's direct appeal, *Nuckols v. State*, 690 P.2d 463 (Okl.Cr.1984) *cert. denied* 471 U.S.

---

1. In Cartwright's case, the second paragraph of the limiting instruction which limited the application of the aggravating circumstance "that the murder was especially heinous, atrocious or cruel" to only those murders involving torture or serious physical abuse was not given. In such a situation, we concur in the conclusion that the circumstance does not sufficiently channel the discretion of the sentencer.

1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985) cited by the Tenth Circuit in *Cartwright v. Maynard*, 822 F.2d 1477 (10th Cir.1987) in support of its proposition that Oklahoma had not adopted a sufficiently narrow set of guidelines to allow this circumstance to pass constitutional muster. We find this concern to be misplaced.

It is true that when this Court originally considered the merits of Petitioner's claims on direct appeal our review was based upon a somewhat broader application of the aggravating circumstance. At that time, we focused our review more on the totality of the circumstances based on the "circumstances leading up to, and the manner in which the homicide was committed." *Nuckols*, 690 P.2d at 472–73. We held that the suffering of the victim was not the sole decisive factor, but was certainly a major factor to be considered. While we have, of necessity, retreated from the totality of the circumstances test, we have not withdrawn from our consideration of the suffering of the victim as a part of the current test nor from consideration of the killer's attitude toward his victim.

Our current test is best understood when measured against the actual instructions given to the sentencer. In the present case, the jury was instructed in accord with the Uniform Jury Instructions which have long been in use in criminal cases:

As used in these Instructions, the term "Heinous" means extremely wicked or shockingly evil; "Atrocious" means outrageously wicked and vile; "Cruel" means pitiless, or designed to inflict a high degree of pain, utter indifference to, or enjoyment of the suffering of others.

The phrase "especially heinous, atrocious, or cruel" is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse.

OUJI–CR No. 436.

■ Clearly, this instruction contemplates a two-step analysis. The jury is told by the second paragraph that they must first find that the "death of the victim was preceded by torture of the victim or serious physical abuse." This threshold determination, established by us in *Stouffer v. State*, 742 P.2d 562 (Okl.Cr.1987), is a constitutionally approved manner of limiting the application of the HAC circumstance to only a specific class of crimes. *See Foster*, 779 P.2d at 593; *Fox v. State*, 779 P.2d 562, 576 (Okl.Cr.1989). We have consistently applied this test to properly narrow the class of defendants to which this aggravating circumstance can be applied. *Fowler v. State*, 779 P.2d 580 (Okl.Cr.1989); *Rojem v. State*, 753 P.2d 359, 368 (Okl.Cr.1988); *Hale v. State*, 750 P.2d 130 (Okl.Cr.1988); *Hayes v. State*, 738 P.2d 533, 543 (Okl.Cr. 1987); *Stout v. State*, 693 P.2d 617, 626 (Okl.Cr.1984). *Cf. Nguyen v. State*, 769 P.2d 167, 174 (Okl.Cr.1988); *Brown v. State*, 753 P.2d 908 (Okl.Cr.1988) and *Odum v. State*, 651 P.2d 703 (Okl.Cr.1982) (no evidence found to support torture or serious physical abuse of the victims in these cases.)

Once this foundational assessment is made, then the jury may apply the definitions given to them in the first paragraph of the instruction to measure whether or not the crime can be considered to have been heinous, atrocious or cruel. The individual criteria set out in the first paragraph, once their application is limited to a narrow class of crimes, are constitutionally valid. *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). It is during this second stage of analysis that the suffering of the victim, among other things, becomes a factor.

Previous decisions of this Court have distinguished some of the factual situations which we have clearly identified as satisfying the criteria set out in the first paragraph of the HAC limiting instruction. In *Mann v. State*, 749 P.2d 1151 (Okl.Cr.1988), we held that evidence that the pain and fright suffered by the murder victim, who was told he would be killed and then locked in the trunk of a car, would fulfill the requirements of the statute.

In *Foster v. State*, 714 P.2d 1031, 1040 (Okl.Cr.1986) (victim beaten with baseball bat and then stabbed); *Cooks v. State*, 699 P.2d 653, 661 (Okl.Cr.1985) (victim raped, beaten and suffocated); *Green v. State*,

713 P.2d 1032, 1042 (Okl.Cr.1985) (victim suffered multiple stab wounds and slashed throat); and *Liles v. State,* 702 P.2d 1025, 1032 (Okl.Cr.1985) (victim stabbed multiple times and left bleeding after robbery), after finding that the victims had suffered either torture or serious physical abuse, we concentrated our review on the "pitiless" nature of the killing. Our affirmance in these cases was based either upon the suffering of the victim or upon the attitude of the killer.

■ While the actual physical suffering of the victim is an important element in the application of HAC, it is clearly not the only element. If the circumstance could be applied only in such a case, defendants who leave no witnesses, make no statements or kill in such a manner that autopsy cannot determine suffering, would be ineligible for consideration under this circumstance. Such a rule is abhorrent in that it could benefit defendants whose crimes are no less fitting for this category of aggravation, but are merely lacking in proof of quantitative suffering by the victim.

■ We believe that the application of the actual definitions of heinous, atrocious and cruel only after a determination that the victim had been subjected to serious physical abuse or torture adequately directs the discretion of the sentencer in not only one way but in two different ways. First, the class of crimes to which the death penalty may be applied under this circumstance is limited to those involving torture or serious physical abuse. The test does not stop there, however. If torture or serious physical abuse is found, the sentencer must go beyond these two criteria and judge whether or not the killing is heinous, atrocious or cruel as defined by the first paragraph of the limiting instructions. By requiring this two step analysis, only those murders which truly are heinous, atrocious or cruel will be set apart from "any other murder." *Zant v. Stephens,* 462 U.S. 862, 878, 103 S.Ct. 2733, 2743, 77 L.Ed.2d 235, 251 (1983).

Having previously reconciled our present limiting treatment of the aggravating circumstance with the constitutional prohibitions under which a system of capitol punishment must be administered, our concern in this case is specifically whether the evidence in Petitioner's case supports a finding that the murder was especially heinous, atrocious or cruel. Although our previous consideration of this aspect of Petitioner's direct appeal was under the broader test previously used by this Court, if we find that the more limited test would have been equally applicable, the sentence may still be affirmed. *Clemons v. Mississippi,* 494 U.S. ——, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990).

The evidence produced at trial establishes that Petitioner and a friend, Greg Campbell, went out one evening in late July, 1982, with the hope of finding and killing a motorist stranded on the highway. The two found such a victim, Freddie Orville Howell, and after fixing a minor problem with Howell's car, invited him to go and drink some beer with them. While stopped at a gas station, drinking beer, Petitioner walked up behind Howell and struck him in the head with a ball-peen hammer. Petitioner stated in both of his confessions, that although he hit Howell very hard, Howell attempted to sit up after being struck. Petitioner hit him with the hammer two more times. Campbell also hit Howell with the hammer a number of times. Both men then kicked and stomped Howell, breaking bones and damaging internal organs.

Although Petitioner remembered that Campbell had taken Howell's wallet, he had no recollection of whether any money was in the wallet or whether he shared in the proceeds. Petitioner and Campbell loaded Howell into the back seat of his car and then drove the car back to the highway.

■ Our review of the evidence allows us to state with certainty that this is a case where the limiting factor of "serious physical abuse" is established. Testimony at trial established that the victim:

> . . . had head injuries and he had multiple skull fractures, he had injuries to his brain and he had multiple lacerations, which means tears and bruises, to his

head. He also had some bruises on his left chest wall, with multiple rib fractures underlying the bruises and he had bruising of his scrotum.

Transcript of jury proceedings, p. 60.

We find, based upon the evidence introduced, that the murder of Freddie Howell falls into a narrow category of crimes for which the death penalty may be considered.

■ Our inquiry now turns to whether or not the murder was heinous, atrocious or cruel. In our original opinion, we held that the facts indicated that the commission of this crime was "shockingly pitiless." *Nuckols*, 690 P.2d at 473. Our opinion of the extraordinary senselessness of this crime has not changed. Appellant went hunting for a person to kill, found such a victim and then killed him. It is difficult to conceive of a more "pitiless" crime. There was no provocation by the victim who was killed purely for the enjoyment of the murderers. This is sufficient to meet the criteria discussed above. *Fisher v. State*, 736 P.2d 1003, 1010 (Okl.Cr. 1987) (savage attack with no provocation by the victim); *Smith v. State*, 727 P.2d 1366 (Okl.Cr.1986) (killer laughed while kicking her victim).

■ Further, we find that the evidence supports a finding that the victim in this case was subjected to a high degree of physical pain before his death. Petitioner told police officers that after the first blow to his head, Howell tried to get up. While the medical examiner could not state with certainty that Howell was still conscious, he did state that unconsciousness would not necessarily occur immediately. Under the circumstances presented at the time, Petitioner felt compelled to strike Howell a number more times to ensure death. We find that this is sufficient evidence to support a finding of physical suffering by the victim.

Because we have identified two different, independent grounds which would support the jury's determination that the murder committed by Petitioner was "especially heinous, atrocious, or cruel," we must affirm the trial court's denial of this portion of Petitioner's application for post-conviction relief.

Likewise, we also affirm the trial court's finding that the jury was not improperly instructed with regard to its treatment of the so called "anti-sympathy" instruction. Arguments identical to those of Petitioner's were recently rejected by the United States Supreme Court in *Saffle v. Parks*, 494 U.S. ——, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). We see no need to address this issue further.

After review of the errors alleged by Appellant, we are unable to conclude that the trial court's decision denying Petitioner's Application for Post–Conviction Relief was in error. Accordingly, that decision is AFFIRMED.

BRETT, PARKS and JOHNSON, JJ., concur.

LUMPKIN, V.P.J., concurs in result.

LUMPKIN, Vice Presiding Judge: concurring in results.

I concur in the results reached by the Court in this matter, however, I must dissent to the analysis of OUJI–CR 436 adopted by the Court. It is apparent on the face of OUJI–CR 436 that the analysis is not defendable under close scrutiny. The analysis assumes that a jury has the benefit of more instructions than those actually given and the jury is guided to the second paragraph first. I realize this process might be the process this Court utilizes in analyzing a case of this type, but the instructions do not tell the jury to follow the step by step analysis the opinion proposes. For example, the opinion states "[t]he jury is told by the second paragraph that they must first find that the 'death of the victim was preceded by torture of the victim or serious physical abuse'." (emphasis added). However, OUJI–CR 436 does not require the jury to first find torture or serious physical abuse. My concern is that we cannot assume the jury follows the same process we might follow as they apply the instructions as they are actually given. In addition, this analysis is not consistent with the analysis of the Court in

*Stouffer v. State,* 742 P.2d 562, 563 (Okl. Cr.1987).

It is clear that OUJI–CR 436 contemplates a two-step analysis. The first paragraph sets forth specific definitions for the terms of this aggravating circumstance. By looking to this paragraph first, the jury is informed of the meanings to be placed upon the words heinous, atrocious and cruel within the context of the law. These definitions provide a foundation for the jury to then consider the second paragraph. The second paragraph directs the jury to limit the application of the above defined terms to murders where there is torture or serious physical abuse of the victim. It is this second paragraph which objectively guides the jury's consideration of this aggravating circumstance. Id. *See also Foster v. State,* 779 P.2d 591, 593 (Okl.Cr. 1989). This procedure of applying the specifically defined terms, as set forth in the first paragraph, to the limited class of crimes, as set forth in the second paragraph, is constitutionally valid. *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

In addition to validating the guidance given to the jury in this case, this Court has determined that an independent reweighing of aggravating and mitigating circumstances is implicit to our statutory duty to determine the factual substantiation of the verdict and the validity of the death sentence. *Stouffer* at 564. *See also Castro v. State,* 749 P.2d 1146 (Okl.Cr. 1988). The United States Supreme Court validated these decisions through its approval of appellate weighing and reweighing of the aggravating and mitigating circumstances in *Clemons v. Mississippi,* 494 U.S. ——, ——, 110 S.Ct. 1441, 1449, 108 L.Ed.2d 725, 739 (1990). I find, after independently weighing the evidence supporting the aggravating circumstance of especially heinous, atrocious or cruel against the mitigating evidence presented at trial, that the sentence of death is factually substantiated and appropriate.