1999 OK CR 32

**Richard Alford THORNBURG, Jr., Appellant,**

**v.**

**STATE of Oklahoma, Appellee.**

No. F–97–679.

Court of Criminal Appeals of Oklahoma.

Aug. 25, 1999.

Rehearing Denied Oct. 5, 1999.

**1240**

John T. Elliott, Oklahoma Indigent Defense System, Norman, Oklahoma, Richard L. Weldon, Chickasha, Oklahoma, for defendant at trial.

Robert E. Gene Christian, Bret T. Burns, Chickasha, Oklahoma, for the State at trial.

Jamie D. Pybas, Perry Hudson, Oklahoma Indigent Defense System, Norman, Oklahoma, for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Robert Whitaker, Assistant Attorney General, Oklahoma City, Oklahoma, for appellee on appeal.

## OPINION

STRUBHAR, Presiding Judge.

¶1 Appellant, Richard Alford Thornburg, Jr., was convicted of First Degree Murder (Counts I, II and III), Shooting With Intent to Kill (Count IV), First Degree Arson (Count V), and Kidnapping (Counts VI and VII), in the District Court of Grady County, Case No. CF–96–240, after a jury trial held before the Honorable James R. Winchester. As to the three counts of First Degree Murder, the State filed a Bill of Particulars alleging four aggravating circumstances: (1) that Appellant knowingly created a great risk of death to more than one person; [1] (2) that the murders were especially heinous, atrocious or cruel; [2] (3) that the murders were committed for the purpose of avoiding or preventing a lawful arrest or prosecution; [3] and, (4) the existence of a probability that Appellant would commit criminal acts of violence that would constitute a continuing threat to society.[4] The jury found the existence of each alleged aggravating circumstance as to each count of First Degree Murder and assessed punishment at death on each of the three counts of First Degree Murder. The jury also assessed punishment at life imprisonment for Shooting With Intent to Kill, thirty-five years imprisonment for First Degree Arson, and ten years imprisonment for each count of Kidnapping. The trial court sentenced Appellant accordingly, ordering the sentences be served consecutively. From this Judgment and Sentence Appellant has perfected his appeal.[5]

1. 21 O.S.1991, § 701.12(2).

2. 21 O.S.1991, § 701.12(4).

3. 21 O.S.1991, § 701.12(5).

4. 21 O.S.1991, § 701.12(7).

5. Appellant's Petition–in–Error was filed in this Court on November 7, 1997. His Brief–in–Chief was filed on August 24, 1998, and the State's Response Brief was filed on December 23, 1998. The case was submitted to this Court on January 19, 1999, and oral argument was heard on April 13, 1999.

## FACTS

¶ 2 Between 3:00 and 4:00 a.m. on September 28, 1996, Glenn Anderson burst into the trailer home of Marvin Matheson brandishing a firearm. Anderson told Matheson that they needed to talk. Shortly thereafter, Appellant and Roger Embrey also entered the trailer. Appellant had been shot prior to this night and the three wanted to question Matheson about the shooting. All three men were armed and they told Matheson they were going to shoot him if he lied to them. The three men also suspected Jim Poteet in the shooting. They decided to question Matheson and Poteet together so they could figure out whether Matheson or Poteet had shot Appellant.

¶ 3 The three armed men forced Matheson out of his trailer at gun point and drove him to Poteet's residence. Once there, Appellant and Embrey went into the house and Anderson and Matheson stayed in the car. When Anderson and Matheson heard gun shots come from the house they went into the house to see what had happened. They saw Terry Shepard sitting in a chair by the bathroom door and Poteet sitting on the bed in the back bedroom. Appellant was holding Poteet at gun point. Poteet had been shot in the foot and was bleeding between the eyes.

¶ 4 The armed men decided that Appellant would take Matheson and go get any people present from Poteet's rental house which was located about seventy yards from Poteet's residence. While walking over to the rental house, Appellant and Matheson saw Keith Smith walking up the driveway. Appellant forced Smith to knock on the door of the rental house and when he did, Donnie Scott opened the door. Appellant then forced Scott, Smith and Matheson to walk back to Poteet's residence.

¶ 5 Once back at Poteet's house, Appellant went back into the bedroom with Poteet. Soon, Embrey took Matheson to the back bedroom. In the bedroom, Appellant gave Matheson a gun and told him to shoot Poteet while Appellant, Anderson and Embrey all pointed their guns at Matheson. Matheson refused to pull the trigger. A gunshot was fired from behind Matheson and Poteet was shot in the side. The only person standing behind Matheson at this time was Appellant. Appellant then told Matheson to shoot another person or he would shoot Matheson. Matheson shot at Scott but the gun did not fire. Appellant made him fire again. This time Matheson shot Scott in the chest. Embrey took Matheson outside to the car. While they were at the car, Matheson heard more shots come from the house. The house was burned and Appellant, Anderson, Embrey and Matheson left the area in Appellant's car. They stopped to hide the guns and let Matheson out of the car.

¶ 6 Shortly after 5:00 a.m. Loyd Keagans and his son, who were driving by, noticed the burning house. As they drove up to the house, they saw an injured man outside. This man was Donnie Scott, who had been shot in the chest. The Keagans' took Scott to a convenience store and called the police. Scott survived the shooting but the bodies of Jim Poteet, Keith Smith and Terry Shepard were found in the burned house. Each of them had been shot and had either died from gunshot wounds or a combination of gunshot wounds and fire related injuries.

¶ 7 When Scott was able, he gave a statement to the police telling what had happened. Matheson also told the authorities what had happened. Appellant, Embrey and Anderson were subsequently arrested.

## FIRST STAGE ISSUES

¶ 8 During defense counsel's cross-examination of State's witness Matheson, defense counsel asked Matheson how long he stayed in jail after he was arrested following the homicides in this case. Matheson responded:

> Like four or five days and I gave a statement to them like when they arrested me in Alex they told me they'd give me a polygraph and if I was telling the truth that they would let me out on an OR bond. And I sat in jail five days or longer, I don't know, or less, I don't know, and I passed the polygraph and I come [sic] in front of the Judge here and got an OR bond.

(TR. III.146)

¶ 9 Appellant correctly advises that this Court has held the results of polygraph

tests are not admissible for any purpose. *See Matthews v. State,* 1998 OKCR 3, ¶ 18, 953 P.2d 336, 343; *Paxton v. State,* 1993 OKCR 59, ¶ 42, 867 P.2d 1309, 1323, *cert. denied,* 513 U.S. 886, 115 S.Ct. 227, 130 L.Ed.2d 153 (1994). The Tenth Circuit Court of Appeals has also held that evidence that a witness has taken a polygraph test is inadmissible. *See U.S. v. Soundingsides,* 820 F.2d 1232, 1241–42 (10th Cir.1987). Accordingly, it is clear that the jury should not have heard testimony indicating that Matheson had taken and passed a polygraph test.

■ ¶ 10 The only real issue to be decided is whether this error requires relief. It is significant that defense counsel did not object to Matheson's testimony regarding the polygraph test and request that the trial court admonish the jury to disregard the improper testimony. Had defense counsel promptly objected and requested an admonishment, the error caused by this testimony may have been cured. *See Sims v. State,* 1987 OKCR 2, ¶ 16, 731 P.2d 1368, 1371. In the absence of such an objection this Court can grant relief only upon a finding of plain error. *Ochoa v. State,* 1998 OKCR 41, ¶ 31, 963 P.2d 583, 596.

■ ¶ 11 We find that Matheson's reference to the polygraph test was a single, isolated response which was not solicited by defense counsel's question. Although Matheson's response was potentially prejudicial because he not only stated that he took the test but also that he passed the test, this improper testimony was not unduly prejudicial under the facts and circumstances of this particular case. This is because Matheson was not the only witness who testified about the events which are the subject of this case. Significant portions of Matheson's testimony were corroborated by Donnie Scott who also was witness to the events which occurred at Poteet's house. Given the evidence presented against Appellant at trial, we do not find that the improper mention of the polygraph examination rose to the level of plain error in this case.

¶ 12 Appellant's defense at trial to the crimes charged was alibi. Defense counsel filed notice prior to trial of his intent to call an alibi witness. This witness was Ruby

Davis, who testified that about 3:00 to 3:15 a.m. on September 28, Appellant and Davis' husband, Roger Embrey, arrived at her home driving Appellant's car. Embrey slept in the house on the couch and Appellant slept in his car. Davis said that she took the car keys from her husband. When she left the house between 7:00 and 7:30 a.m., Appellant was still asleep in the back seat of his car. Although the trial court instructed the jury on the defense of alibi, Appellant complains in his second proposition that the trial court erred in not also instructing the jury, sua sponte, on the defense of voluntary intoxication and the lesser crime of First Degree Manslaughter.

■ ¶ 13 Because Appellant did not request instructions on either voluntary intoxication or First Degree Manslaughter, Appellant has waived all but plain error. *See Perry v. State,* 1995 OKCR 20, ¶ 46, 893 P.2d 521, 531. In *Perry* this Court held that where the defense raised at trial was that the defendant did not kill the victim—not that he killed the victim while intoxicated—the trial court did not commit plain error by failing to instruct, sua sponte, on the defense of voluntary intoxication. *Id,* 893 P.2d at 531–32. *See also Hooker v. State,* 1994 OKCR 75, ¶ 32, 887 P.2d 1351, 1361, *cert. denied,* 516 U.S. 858, 116 S.Ct. 164, 133 L.Ed.2d 106 (1995) ("Instructions on self-defense and voluntary intoxication were not warranted since Hooker's defense was not that he acted in self-defense or was so intoxicated as to be [un-]able to form the requisite intent but rather that he did not commit the crimes at all, or at least that the State failed to prove beyond a reasonable doubt that he was the murderer.").

■ ¶ 14 Appellant acknowledges this Court's holdings in *Perry* and *Hooker* and suggests that his case is distinguishable because his testimony did not render every defense unavailable except alibi. In support of this argument Appellant points to his testimony that he was in an alcoholic blackout and although he did not believe that he had committed the murders, he did not remember. He argues that it is not inconsistent to assert that he did not commit the murders,

but if he did, he was so intoxicated that he could not form the requisite intent. This Court has held that "while [an] Appellant is entitled to an instruction on his theory of defense, he is not entitled to instructions on every possible theory of defense." *Carter v. State*, 1994 OKCR 49, ¶ 41, 879 P.2d 1234, 1249, *cert. denied*, 513 U.S. 1172, 115 S.Ct. 1149, 130 L.Ed.2d 1107 (1995). The jury was instructed on Appellant's proffered defense of alibi and we cannot find that the trial court committed plain error by failing to instruct, sua sponte, on the defense of voluntary intoxication.

¶ 15 Appellant offers little argument as to why an instruction on the lesser offense of First Degree Manslaughter should have been given except to note that this degree of homicide corresponds to the defense of voluntary intoxication. This Court has held that jury instructions on lesser included offenses are required only where they are warranted by the evidence. *See Locke v. State*, 1997 OKCR 43, ¶ 10, 943 P.2d 1090, 1094. *See also Robedeaux v. State*, 1993 OKCR 57, ¶ 55, 866 P.2d 417, 431, *cert. denied*, 513 U.S. 833, 115 S.Ct. 110, 130 L.Ed.2d 57 (1994). The evidence did not warrant instructions on First Degree Manslaughter as there was no evidence of adequate provocation which is required to support a conviction for this crime. *See Le v. State*, 1997 OKCR 55, ¶¶ 19–21, 947 P.2d 535, 546–47, *cert. denied*, —— U.S. ——, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998). Accordingly, the trial court did not err in failing to give an instruction on this crime.

¶ 16 Appellant complains in his third proposition that he was denied his Sixth Amendment confrontation rights due to the introduction of hearsay statements of non-testifying codefendants. Appellant was charged jointly in this case with codefendants Glenn Anderson and Roger Embrey, who were both tried separately. Appellant argues that testimony by Matheson about comments made by Anderson and Embrey during the commission of the crimes constituted hearsay and should not have been admitted at his trial. Appellant acknowledges that none of the comments at issue on appeal were objected to by defense counsel at trial.

Accordingly, this Court can review these comments only for plain error. *Simpson v. State*, 1994 OKCR 40, 876 P.2d 690.

¶ 17 While many of the comments at issue were hearsay and should not have been admitted at trial, we do not find that the improper admission of these comments rose to the level of plain error. In addition to the few hearsay comments which indicated the codefendants' intent to kill the victims, there were numerous of Appellant's own statements properly admitted into evidence which indicated his same intent. These properly admitted statements along with the eyewitness accounts of the actual activities which transpired provided overwhelming evidence supporting Appellant's conviction. Accordingly, the several improperly admitted hearsay statements did not rise to the level of plain error and do not warrant relief.

¶ 18 On the morning of the third day of trial, Juror Collins called and informed the court that she had a flat tire. The court sent a deputy to pick her up. When she arrived she was not dressed for court. The trial court conducted an in camera hearing during which Juror Collins informed the trial court that she didn't think she was going to be able to "handle this." She explained that her fiancé held certain religious beliefs and didn't think that she should be judging others. She claimed that she had not told him anything about the case but she was concerned about the conflict her jury service created in her relationship with her fiancé. Toward the end of the trial court's questioning, Collins stated that she could continue her jury duty without letting her fiancé influence her. After argument by counsel for both the State and the defense, the trial court stated it was clear that Collins had violated the rule of sequestration and had discussed the case with her fiancé. The trial court excused Collins and replaced her with the first alternate juror. Appellant argues in his fourth proposition that this ruling was in error.

¶ 19 Appellant is correct in advising that before a juror can be removed for misconduct, the misconduct must be proven by clear and convincing evidence. *Spunaugle v. State*, 1997 OKCR 47, ¶ 33, 946 P.2d

246, 253. Appellant is also correct in his assertion that the record does not reflect by clear and convincing evidence that Juror Collins violated the rule of sequestration by discussing this case with her fiancé. However, Appellant's argument that this error requires reversal is less convincing. Although Juror Collins may have been improperly removed, she was replaced by an alternate juror who had been passed upon by both the State and defense. Appellant has shown no prejudice from having his case decided by alternate Juror Boren rather than Juror Collins and we decline to find any. Reversal is not warranted.

### FIRST AND SECOND STAGE ISSUES

¶ 20 In his fifth proposition Appellant asserts that the admission into evidence of seven photographs of the victims' charred remains constituted error rendering his verdict unfair and undermining the reliability of the death sentences. These photographs were indeed gruesome. However, the test for admissibility of photographs is not whether they are gruesome or inflammatory, but whether their probative value is substantially outweighed by the danger of unfair prejudice. *Hooks v. State*, 1993 OKCR 41, ¶ 24, 862 P.2d 1273, 1280, *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994); 12 O.S.1991, § 2403. Whether to introduce photographs of a homicide victim is a decision largely within the trial court's discretion. *Id.* A trial court's decision to allow the introduction of photographs will not be disturbed absent an abuse of discretion.

¶ 21 It is well established that "photographs of murder victims can be probative in many respects.... They can show the nature, extent and location of wounds, establish the corpus delicti, corroborate testimony of medical examiners and expert witnesses and depict the crime scene." *Smallwood v. State*, 1995 OKCR 60, ¶ 33, 907 P.2d 217, 228, *cert. denied*, 519 U.S. 980, 117 S.Ct. 431, 136 L.Ed.2d 330 (1996). Here, the photographs at issue are probative insofar as they corroborate the medical examiner's testimony, depict the crime scene and establish corpus delicti. The photographs are disturb-

ing but their prejudicial effect does not substantially outweigh their probative value. The trial court did not abuse its discretion in admitting the photographs into evidence.

¶ 22 The State introduced into evidence photographs of the three victims in this case taken while they were alive. Appellant complains in his sixth proposition that the introduction of these pre-mortem photographs was error requiring reversal. As defense counsel lodged no objection to the admission of these exhibits, this Court will review only for plain error. *See Ochoa*, 1998 OKCR 41, at ¶ 43, 963 P.2d at 599.

¶ 23 This Court has held that photographs of homicide victims taken while alive are inadmissible unless they are relevant to some material issue and their relevancy outweighs the danger of prejudice to the defendant. *Tilley v. State*, 1998 OKCR 43, ¶ 32, 963 P.2d 607, 615. *See also Valdez v. State*, 1995 OKCR 18, ¶ 64, 900 P.2d 363, 381, *cert. denied*, 516 U.S. 967, 116 S.Ct. 425, 133 L.Ed.2d 341 (1995). In the present case, the identity of the victims was not a material issue and accordingly, these pre-mortem photographs should not have been admitted into evidence. However, as Appellant has failed to show that this improper admission constituted plain error in either stage of trial, relief is not warranted.

¶ 24 Appellant complains in his seventh proposition that prosecutorial misconduct occurring in both stages of trial deprived him of a fair trial and a reliable sentencing proceeding. None of the comments to which Appellant objects were met with objection at trial. Thus, Appellant has waived all but plain error. *Darks v. State*, 1998 OKCR 15, ¶ 53, 954 P.2d 152, 166. See *also Robinson v. State*, 1995 OKCR 25, ¶ 10, 900 P.2d 389, 395–96. This Court has long held that the right of argument contemplates a liberal freedom of speech, and that the range of discussion, illustration, and argumentation is wide. *Marshall v. State*, 1998 OKCR 30, ¶ 20, 963 P.2d 1, 8, *cert. denied*, —— U.S. ——, 119 S.Ct. 910, 142 L.Ed.2d 908 (1999). We find that many of the comments complained of fell within the prosecutors' wide range of permissible argu-

ment. We also find that those comments which were inappropriate were not so egregious as to rise to the level of plain error.

¶ 25 In his eighth proposition, Appellant contends he was denied effective assistance of trial counsel. Appellant cites as deficient performance trial counsel's failure to object to testimony concerning a polygraph examination, counsel's failure to utilize the defense of voluntary intoxication and request instructions on this defense and the crime of First Degree Manslaughter, counsel's failure to object to inadmissible hearsay, counsel's failure to object to the rebuttal testimony of Teresa Embrey, counsel's failure to object to prosecutorial misconduct, counsel's failure to object to improper victim impact evidence, and counsel's failure to request proper instructions on mitigation. To successfully prove ineffective assistance of counsel, Appellant must show: (1) that defense counsel's performance was deficient; and (2) that he was prejudiced by the deficient performance. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See also Douglas v. State,* 1997 OKCR 79, ¶ 108, 951 P.2d 651, 679, *cert. denied,* —— U.S. ——, 119 S.Ct. 195, 142 L.Ed.2d 159 (1998). Failure to prove either of these elements is fatal to Appellant's entire claim. *Id.*

¶ 26 The merits of all but one of the claims set forth in this proposition as ineffective assistance of counsel have been discussed in this opinion. We found in each proposition that error had occurred but because the error had not been met with timely objection from defense counsel relief was not warranted as the error did not rise to the level of plain error. In light of our discussion of the merits of these claims, this Court finds that defense counsel's failure to object to testimony concerning a polygraph examination, counsel's failure to utilize the defense of voluntary intoxication and request instructions on this defense, counsel's failure to object to inadmissible hearsay, counsel's failure to object to prosecutorial misconduct, counsel's failure to object to improper victim impact evidence, and counsel's failure to request proper instruction on mitigation rendered his performance deficient. However,

because we do not find that Appellant was prejudiced by counsel's deficient performance, relief is not warranted on the claim of ineffective assistance of counsel.

¶ 27 Appellant's claim that defense counsel was ineffective for failing to object to the rebuttal testimony of Teresa Embrey because Ms. Embrey had not been endorsed as a witness is without merit. The State is not required to endorse rebuttal witnesses. *See Cheney v. State,* 1995 OKCR 72, ¶ 70, 909 P.2d 74, 91. Thus, defense counsel's objection would not have been properly sustained.

¶ 28 As part of his eighth proposition, Appellant asks this Court to grant him an evidentiary hearing on Sixth Amendment claims supported by matters outside the trial record pursuant to Rule 3.11(B)(3)(b)(i), Rules of the Court of Criminal Appeals, 22 O.S.Supp.1996, Ch. 18, App. He specifically requests a hearing on defense counsel's failure to investigate and present available mitigating evidence, his failure to investigate, develop and present additional evidence of voluntary intoxication, and counsel's failure to ask for a continuance in order to gather evidence to impeach State's witness Teresa Embrey.

¶ 29 Rule 3.11 allows an appellant to request an evidentiary hearing when it is alleged on appeal that trial counsel was ineffective for failing to "utilize available evidence which could have been made available during the course of trial...." Once an application has been properly submitted along with supporting affidavits, this Court reviews the application to see if it contains "sufficient evidence to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence." Rule 3.11(B)(3)(b)(i), Rules of the Court of Criminal Appeals, 22 O.S.Supp.1996, Ch. 18, App. We have reviewed Appellant's brief in support of his Application for Evidentiary Hearing on Sixth Amendment Claims and the supporting affidavits and we find Appellant has not shown by clear and convincing evidence a strong possibility that defense counsel was ineffective for failing to utilize or identify this evidence. Accordingly,

we decline to grant Appellant's application for an evidentiary hearing.

## SECOND STAGE ISSUES

¶ 30 The State called two witnesses to give victim impact testimony during the second stage of trial. Appellant argues in his ninth proposition that the use of the victim impact testimony was error for several reasons. He first complains that the testimony exceeded the scope of permissible victim impact evidence because it was based exclusively on the emotional impact the witnesses suffered as a result of the victims' deaths. He specifically complains that the daughter of Terry Shepard improperly speculated about how she would be impacted by her father's absence from her wedding and the birth of her children—events which had not yet happened. Appellant argues that these comments served only to elicit an emotional response from the jury.

¶ 31 Victim impact evidence is intended to provide a "quick glimpse" of a victim's characteristics and the effect of the victim's death on survivors. *Cargle v. State,* 1995 OKCR 77, ¶ 75, 909 P.2d 806, 828, *cert. denied,* 519 U.S. 831, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996). "[V]ictim impact evidence should be restricted to those unique characteristics which define the individual who has died, the contemporaneous and prospective circumstances surrounding that death, and how those circumstances have financially, emotionally, psychologically, and physically impacted on members of the victim's immediate family." *Id.* While the victim impact testimony complained of was speculative in nature and bordered upon impropriety, its focus on emotion was not so overwhelming as to divert the jury from its duty to reach a reasoned response.

¶ 32 Appellant next complains that the State failed to provide sufficient pretrial notice of the victim impact testimony and the trial court failed to hold an in camera hearing regarding the proposed victim impact evidence. In *Cargle,* 1995 OKCR 77, at ¶ 76, 909 P.2d at 828, this Court held the State should file a notice of intent to produce victim impact evidence detailing the evidence

it seeks to introduce. Further, prior to offering victim impact evidence, the trial court should hold an in camera hearing to determine the admissibility of the proposed evidence pursuant to 12 O.S.1991, § 2403. *Id.* The State is limited to the evidence listed in its notice and no other victim impact evidence should be admitted. *Id.*

¶ 33 Appellant asserts that the State provided no notice that it would produce Keith Smith's mother, Shirley Smith, as a victim impact witness. Further, although the record contains victim impact statements from five members of the Shepard family, including that of Sharee Shepard who actually did testify, there is no indication whether defense counsel received this as notice of the victim impact evidence the State was planning to present. Accordingly, the record supports Appellant's assertion that notice in this case was inadequate and the failure to conduct an in camera hearing was error. However, the record also reflects that defense counsel did not object to the presentation of the victim impact evidence at trial and therefore, has waived all but plain error. *See Le,* 1997 OKCR 55, at ¶ 38, 947 P.2d at 551. In light of the strong evidence admitted in support of the aggravating circumstances upheld in this case, the two short, but emotional, victim impact statements can be found to have been harmless beyond a reasonable doubt. This error was not plain error and does not require relief.

¶ 34 Appellant also complains that the jury received no instructions on the legal effect they were to give to the victim impact evidence. Appellant did not request an instruction on victim impact evidence, and did not complain that the trial judge did not administer one. Appellant has failed to demonstrate how the lack of an instruction has harmed him, how the jury's sentencing discretion was improperly channeled, or how the jury was influenced by the victim impact evidence to impose a sentence not supported by the evidence. *See Darks,* 1998 OKCR 15, at ¶ 48, 954 P.2d at 165. *See also Charm v. State,* 1996 OKCR 40, ¶ 39, 924 P.2d 754, 766, *cert. denied,* 520 U.S. 1200, 117 S.Ct. 1560, 137 L.Ed.2d 707 (1997). This argument warrants no relief.

¶ 35 Finally, Appellant complains that victim impact evidence has no place in Oklahoma's sentencing scheme as it operates as an irrelevant, improper, nonstatutory "superaggravator" that will always be present in every capital case. This Court has held that victim impact evidence does not act as a "superaggravator" and is a relevant consideration under Oklahoma's capital sentencing scheme. *See Douglas,* 1997 OKCR 79, at ¶ 82, 951 P.2d at 675. We decline to hold otherwise at this time.

¶ 36 In his tenth proposition, Appellant argues that the evidence was insufficient to prove beyond a reasonable doubt the existence of a probability that he would commit criminal acts of violence that would constitute a continuing threat to society. "When the sufficiency of the evidence of an aggravating circumstance is challenged on appeal, the proper test is whether there was any competent evidence to support the State's charge that the aggravating circumstance existed. In making this determination, this Court should view the evidence in the light most favorable to the State." *Hain v. State,* 1996 OKCR 26, ¶ 62, 919 P.2d 1130, 1146, *cert. denied,* 519 U.S. 1031, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996). When the continuing threat aggravating circumstance is alleged, the State is required to present proof that the defendant's behavior presents a threat to society and that the threat will continue in the future. *Perry,* 1995 OKCR 20, at ¶ 61, 893 P.2d at 536. "The aggravator is not established unless the evidence at trial supports a finding that the defendant will continue to present a threat to society after sentencing." *Malone v. State,* 1994 OKCR 43, ¶ 38, 876 P.2d 707, 717.

¶ 37 The State introduced evidence that Appellant had been known to engage in barroom brawls before the events of this case occurred. There was also evidence that after the victims in this case had been killed, Appellant was overheard saying, "three died last night and three more will die tomorrow." [6] After he was incarcerated, Appellant menaced other inmates and assaulted a jailer. Finally, we find the callous nature of the crime also supports this aggravating circum-

stance. *See Pennington v. State,* 1995 OKCR 79, ¶ 70, 913 P.2d 1356, 1371, *cert. denied,* 519 U.S. 841, 117 S.Ct. 121, 136 L.Ed.2d 72 (1996). As we find the evidence was sufficient to support the finding that Appellant poses a continuing threat to society, this proposition must fail.

¶ 38 The jury found Appellant had murdered each victim to avoid lawful arrest or prosecution. Appellant argues in his eleventh proposition that the evidence was insufficient to support the jury's finding of this aggravating circumstance. "The focus of the aggravating circumstance that the murder was committed to avoid lawful arrest or prosecution is the state of mind of the murderer; it is he who must have the purpose of avoiding or preventing lawful arrest or prosecution." *Gilbert v. State,* 1997 OKCR 71, ¶ 104, 951 P.2d 98, 122, *cert. denied,* — U.S. —, 119 S.Ct. 207, 142 L.Ed.2d 170 (1998). Further, this aggravator requires a predicate crime, separate from the murder, for which the appellant seeks to avoid arrest or prosecution. *Id. See also Barnett v. State,* 1993 OKCR 26, ¶ 30, 853 P.2d 226, 233.

¶ 39 Appellant first argues that this aggravating circumstance must fail as to Count I, the murder of Jim Poteet, because there was no predicate crime to Poteet's murder. Appellant did not kill Poteet to avoid arrest or prosecution for another crime. The State concedes that this aggravating circumstance must fail as to Count I, Poteet's murder, and we agree.

[47–49] ¶ 40 Appellant also asserts that this aggravating circumstance must fail as to Counts II and III, the murders of Keith Smith and Terry Shepard. Appellant argues that because it is not possible to tell from the evidence whether Poteet died before Smith or Shepard, the evidence does not support a finding that Smith and Shepard were killed to prevent Appellant from being arrested or prosecuted for Poteet's murder. It does not matter that Poteet may actually have died after Smith and/or Shepard. The record clearly supports a finding that Poteet was assaulted and then shot before Smith and

6. Trial Transcript IIII, p. 216.

Shepard were shot. Equally untenable is Appellant's argument that the three deaths were part of one continuing transaction and as such, one cannot be used to support this aggravator for the other two. This Court has applied no such restriction on the application of this aggravator. *See Hooper v. State*, 1997 OKCR 64, ¶ 42, 947 P.2d 1090, 1106–1107, *cert. denied*, —— U.S. ——, 118 S.Ct. 2353, 141 L.Ed.2d 722 (1998) (Evidence supported a finding that Hooper shot Tonya because he sought to avoid arrest or prosecution for Cindy's murder. Cindy's murder, although contemporaneous in time and place, provided a sufficient predicate crime.).

¶ 41 Finally, Appellant argues that there was no evidence to establish beyond a reasonable doubt that he intended for Smith and Shepard to be killed to prevent his arrest or prosecution for Poteet's murder. The Appellant's intent regarding this aggravating circumstance can be inferred from circumstantial evidence. *Mollett v. State*, 1997 OKCR 28, ¶ 49, 939 P.2d 1, 13, *cert. denied*, —— U.S. ——, 118 S.Ct. 859, 139 L.Ed.2d 758 (1998). There was sufficient circumstantial evidence from which the jury could find beyond a reasonable doubt that Appellant intended that Smith and Shepard be killed in order to prevent his arrest and prosecution for the murder of Poteet.

¶ 42 In aggravation of each of Counts I, II and III, the jury found that Appellant knowingly created a great risk of death to more than one person. Appellant, in his twelfth proposition, argues that the evidence does not support the jury's finding regarding this aggravating circumstance. This Court has held that this aggravating circumstance is proved by acts of a defendant which create a great risk of death to another "in close proximity, in terms of time, location, and intent" to the killing. *Le*, 1997 OKCR 55, at ¶ 33, 947 P.2d at 549. "It may be appropriate where only one person is killed, where more than one person is killed, or where more than one person is killed but the murders are not contemporaneous." *Id.*

¶ 43 The evidence in the present case showed that Appellant and his codefendants killed three people and shot another.

Appellant assumed a leadership position in these events. He shot Poteet and encouraged the shooting of the other victims. This evidence of Appellant's participation is sufficient to support the jury's finding that he knowingly created a great risk of death to more than one person on each of the three counts of First Degree Murder.

¶ 44 Appellant also argues that as applied to him, this aggravating circumstance is vague and overbroad. We have rejected claims that this aggravating circumstance is vague and overbroad. *See Douglas*, 1997 OKCR 79, at ¶ 98, 951 P.2d at 677; *Valdez*, 1995 OKCR 18, at ¶ 68, 900 P.2d at 382. We are not persuaded by Appellant's argument to the contrary in this case.

¶ 45 In his thirteenth proposition Appellant argues that there was insufficient evidence to prove that the deaths of Terry Shepard and Keith Smith were "heinous, atrocious or cruel." To sustain this aggravator, the State must present sufficient evidence to prove beyond a reasonable doubt that death was preceded by conscious serious physical abuse or torture or mental torture. "The heinous, atrocious or cruel aggravating circumstance is restricted to those murders in which torture or serious physical abuse is present." *Jackson v. State*, 1998 OKCR 39, ¶ 81, 964 P.2d 875, 894, *cert. denied*, —— U.S. ——, 119 S.Ct. 1150, 143 L.Ed.2d 217 (1999). *See also Nuckols v. State*, 1991 OKCR 10, ¶ 6, 805 P.2d 672, 674, *cert. denied*, 500 U.S. 960, 111 S.Ct. 2276, 114 L.Ed.2d 727 (1991). Appellant argues that the deaths of Shepard and Smith were not preceded by torture or serious physical abuse.

¶ 46 The evidence supported a finding that Shepard and Scott were kidnapped and held at gunpoint while they heard Poteet being beaten and shot. Both Shepard and Smith were subsequently shot in the chest region and died as a result of the gunshot wounds. The medical examiner opined that Shepard was alive at the time that he received burns from the fire, but he could not determine whether Smith was alive at the time that he was burned. The medical examiner also stated that there was no reason to assume that the men were rendered immedi-

ately unconscious and unaware of their surroundings. This evidence supported the jury's conclusion that the deaths of Shepard and Smith were especially heinous, atrocious or cruel.

¶ 47 Appellant further argues that even if the deaths of these two victims were especially heinous, atrocious or cruel, the evidence did not establish that he was the one who caused this. In support of his argument, Appellant cites to this Court's rulings in *Barnett v. State*, 1993 OKCR 26, 853 P.2d 226 and *Hawkins v. State*, 1994 OKCR 83, 891 P.2d 586. It is notable that in both of these cases the acts of the codefendants which provided the basis of the especially heinous, atrocious or cruel aggravating circumstance, were committed by the codefendants completely independent of the defendant. In the present case, although the codefendants may have committed some of the acts which rendered the killings especially heinous, atrocious or cruel, the record supports a finding that Appellant actively encouraged the shooting of the victims and, at the very least, acquiesced to the setting of the fire. We find Appellant's participation in the murders of Shepard and Smith to have been significant and sufficient to support the especially heinous, atrocious or cruel aggravating circumstance.

¶ 48 Appellant argues in his fourteenth proposition that the trial court improperly instructed the jury that that the "especially heinous, atrocious or cruel" aggravating circumstance is directed toward crimes where the death of the victim is proceeded by torture of the victim or "serious abuse" rather than "serious physical abuse" as is proper under Oklahoma law. *See* OUJI–CR2d 4–73. Appellant argues that this instruction did not channel the jury's discretion limiting its consideration to torture or "serious physical abuse." Appellant is correct in his assertion that this instruction was given in error. *See Turrentine v. State*, 1998 OKCR 33, ¶ 67, 965 P.2d 955, 975, *cert. denied*, —— U.S. ——, 119 S.Ct. 624, 142 L.Ed.2d 562 (1998). However, we have also found this error to be harmless as the incor-

rect instruction does not lessen the standard of proof and thus could not have impacted the sentencing decision. *Id.* We hold no differently now.

¶ 49 In his fifteenth proposition, Appellant challenges the constitutionality of three of the aggravating circumstances found to exist in the present case. He recognizes that this Court has in the past addressed the constitutionality of each of these aggravating circumstances. This Court has in fact consistently upheld the constitutionality of the "continuing threat" aggravating circumstance. *See Cannon v. State*, 1998 OKCR 28, ¶ 73, 961 P.2d 838, 855. *See also Bryan v. State*, 1997 OKCR 15, ¶ 55, 935 P.2d 338, 365, *cert. denied*, —— U.S. ——, 118 S.Ct. 383, 139 L.Ed.2d 299 (1997). This Court has also reaffirmed the constitutionality of the "great risk of death" aggravating circumstance. *See Wood v. State*, 1998 OKCR 19, ¶ 57, 959 P.2d 1, 15. *See also Douglas*, 1997 OKCR 79, at ¶ 98, 951 P.2d at 677. Finally, this Court has consistently rejected challenges to the "especially heinous, atrocious or cruel" aggravating circumstance. *Willingham v. State*, 1997 OKCR 62, ¶ 68, 947 P.2d 1074, 1087, *cert. denied*, —— U.S. ——, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998). Although Appellant urges this Court to reconsider our prior holdings regarding the constitutionality of these three aggravating circumstances, we do not choose to hold differently now.

¶ 50 Appellant argues in his sixteenth proposition that the trial court erred in failing to instruct the jury to consider his intoxication at the time of the offense and his brain damage resulting from chronic alcoholism as mitigating circumstances. It is significant to note that before issuing the jury instructions, the trial court allowed defense counsel to review proposed Instruction No. 11 which listed mitigating circumstances. The trial court told defense counsel, "I'll let you review those and add anything you wish." [7] Defense counsel replied that the instructions were appropriate and he had no requested instructions. As defense counsel did not request an instruction covering Appellant's history of alcoholism and intoxi-

---

7. Trial Transcript IV, p. 168.

cation at the time of the offense, he has waived all but plain error. *See Wood,* 1998 OKCR 19, at ¶ 45, 959 P.2d at 12.

 ¶ 51 A review of Instruction No. 11 on mitigation reveals that the jury was instructed that they should consider as mitigating Appellant's diminished capacity and that he was under the influence of mental/emotional disturbance. They were also informed that they could consider other mitigating circumstances. In light of these instructions, we do not find that the absence of specific instructions on Appellant's brain damage and his intoxication at the time of the offense was plain error.

 ¶ 52 In his seventeenth proposition Appellant argues that the trial court erred in failing to give second stage instructions that would focus the jury's attention on Appellant's individual culpability prior to imposing the death sentence upon him. Specifically, he states that the trial court should have given an Enmund/Tison [8] instruction. However, in recent cases this Court has held that "an Enmund/Tison instruction is not required in the second stage of a malice murder case where the jury has been instructed properly during the first stage of trial on aiding and abetting and the elements of first degree malice murder." *Ochoa,* 1998 OKCR 41, at ¶ 68, 963 P.2d at 604. *See also Cannon v. State,* 1995 OKCR 45, ¶¶ 39–40, 904 P.2d 89, 104–105, *cert. denied,* 516 U.S. 1176, 116 S.Ct. 1272, 134 L.Ed.2d 219 (1996). The trial court in the present case properly instructed the jury on the elements of first degree malice murder and on aiding and abetting. As Appellant has failed to persuade us otherwise, we decline to depart from established precedent at this time and we find that the trial court did not err by not giving an Enmund/Tison instruction in the second stage of Appellant's trial.

 ¶ 53 In his eighteenth proposition of error, Appellant argues that if none of the errors are sufficient for reversal on their own, then the combined effect of the errors deprived him of a fair trial and the cumulative error requires reversal.

This Court has held that where there is no error present, there can be no accumulation of error. However, when there have been numerous irregularities during the course of the trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors was to deny the defendant a fair trial.

*Smith v. State,* 1996 OKCR 50, ¶ 62, 932 P.2d 521, 538, *cert. denied,* 521 U.S. 1124, 117 S.Ct. 2522, 138 L.Ed.2d 1023 (1997) (citations omitted). While it can be found in the present case that there were some irregularities during the course of the trial, even taken together, these cannot be found to have been so great as to have denied Appellant a fair trial. Accordingly, relief is not warranted.

## MANDATORY SENTENCE REVIEW

 ¶ 54 In accordance with 21 O.S.1991, § 701.13(C), we must determine whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and whether the evidence supports the jury's finding of aggravating circumstances. Upon review of the record, we cannot say the sentence of death was imposed because the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to 21 O.S.1991, § 701.13(C).

 ¶ 55 As to each of the three counts of First Degree Murder, the jury found the existence of four aggravating circumstances: (1) that Appellant knowingly created a great risk of death to more than one person; (2) that the murders were especially heinous, atrocious or cruel; (3) that the murders were committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and (4) the existence of a probability that Appellant would commit criminal acts of violence that would constitute a continuing threat to society. As to Count I, the murder of Jim Poteet, we found the evidence insufficient to support the jury's finding that Appellant killed Poteet to avoid or prevent a lawful arrest or prosecution. We found the evidence sufficient to support this aggravating

---

**8.** See *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987).

circumstance for Counts II and III. We also found the evidence sufficient to support the other alleged aggravating circumstances as to each of the three counts of First Degree Murder. This Court reweighed the remaining aggravating circumstances against the mitigating evidence and determined that the sentences of death are both appropriate and factually substantiated.

JOHNSON, J., CHAPEL, J., and LILE, J., concur.

LUMPKIN, V.P.J., concurs in results.

LUMPKIN, Vice-Presiding Judge: concurs in results.

¶ 1 I concur in the affirmance of the judgment and sentence in this case but write separately to address the following issues.

¶ 2 Initially, applying my analysis in *Jackson v. State*, 964 P.2d 875, 900–902 (Okl.Cr. 1998) to the facts in this case, the evidence was insufficient to warrant a jury instruction on the defense of voluntary intoxication. Although Appellant claimed he was in an alcoholic blackout and could not remember the murders, the State produced evidence that two (2) days after the murders he said that "three died last night and three more will die tomorrow." (Tr. III, pg. 216). This evidence of Appellant's memory of the offenses, together with the testimony of the eyewitness regarding his conduct at the time of the offenses, shows he was not entitled to a defense of voluntary intoxication.

¶ 3 As to Appellant's claim of ineffective assistance of counsel, the Supreme Court has said in *Strickland v. Washington*, 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699 (1984) and as further clarified in *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) when a claim of ineffectiveness of counsel can be disposed of on the ground of lack of prejudice, that course should be followed. Here, the Court decides that counsel's conduct was deficient and then decides the prejudice question. This is the reverse of the analysis set forth by the Supreme Court and adopted by this Court. *See Paxton v. State*, 910 P.2d 1059, 1062 (Okl.Cr.1996); *Allen v. State*, 909 P.2d 836, 839 (Okl.Cr.1995); *Duvall v. State*, 825 P.2d 621, 637–38 (Okl.Cr.1991). Applying the proper method of analysis, we need only find Appellant was not prejudiced by counsel's failure to enter certain objections as these were minor omissions which did not render the trial unfair or the verdict suspect or unreliable. With that finding, we need not undertake the analysis to determine whether counsel's conduct was actually deficient.

¶ 4 I agree with the denial of the Application for Evidentiary Hearing on Sixth Amendment Claims and offer the following analysis to support that decision. In order to meet the "clear and convincing" standard to warrant an evidentiary hearing, Appellant must present this Court with evidence, not speculation, second guesses or innuendo. This requirement of setting forth evidence does not include requests for more time to develop and investigate information which might be available. Instead it requires evidence that is not merely cumulative to that presented at trial. The application must present something new or different which raises the question whether trial counsel's failure to present the evidence was ineffectiveness, or merely trial strategy.

¶ 5 In the present case, an affidavit is provided by Dr. Phillip J. Murphy, Ph.D. Dr. Murphy states that he testified during the penalty phase of trial to the types of mental defects from which Appellant suffered, the likelihood he would suffer alcoholic blackouts on a regular basis, and information concerning his future dangerousness. He further states that subsequent to trial, he received numerous medical records on Appellant. Relying upon these records, which came from various hospitals and drug treatment centers, and the findings of Dr. Mash, a neuropharmacologist, Dr. Murphy concluded in part, that Appellant's "higher brain centers which provide for his typical decisions were not operative during the time when he apparently committed this crime." He also states that after reviewing the records provided to him subsequent to Appellant's trial, his conclusion that Appellant was unable to "form usual criminal intent" mirrored his conclusion given at trial. (Exhibit A to Appellant's application). Reviewing this affidavit, I find portions of it are merely cumulative to the

testimony at trial, and other portions are only speculation and opinion based on someone else's evaluation.

¶ 6 Another affidavit is provided by Dr. Deborah C. Mash, Ph.D. wherein she states she reviewed certain records and reports on Appellant in order to give her expert opinion regarding the effects certain illegal drugs and alcohol may have had on Appellant's mental state. Dr. Mash never met Appellant and her opinion is based solely upon her review of records prepared by others and Appellant's testimony. As I discussed in *White v. State*, 973 P.2d 306, 314 (Okl.Cr. 1998) (Lumpkin, J., specially concur) Standard 7–6.6, *American Bar Association Criminal Justice Mental Health Standards* limits expert testimony regarding opinions on the defendant's intent at the time of the crime. Reviewing Dr. Mash's affidavit, I find most of it is speculation and improper opinion testimony.

¶ 7 The remainder of the affidavits are from family and friends who state that Appellant was drinking the night of the murder and give opinions on his level of intoxication at the time, and that Appellant he was a nice guy when he was not drinking too much. This type of evidence was presented at trial, therefore the affidavits are merely cumulative.

¶ 8 Having reviewed the affidavits under the analysis set forth above, I find sufficient evidence has not been presented showing a strong possibility trial counsel was ineffective for failing to present the evidence contained in the affidavits as such evidence was cumulative, speculative and improper opinion evidence. Therefore, I would deny the Application for Evidentiary Hearing on Sixth Amendment Claims.