**Frank Junior EDWARDS, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–15023.**

Court of Criminal Appeals of Oklahoma.

Oct. 28, 1970.

Don Anderson, Public Defender, Oklahoma County, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Dale F. Crowder, Asst. Atty. Gen., for defendant in error.

NIX, Judge:

Plaintiff in error, Frank Junior Edwards, hereinafter referred to as defendant, was charged, tried by a jury, and convicted of murder in the District Court of Oklahoma County, Case No. 34260. Judgment and sentence was imposed on September 19, 1968, in accordance with the jury's verdict sentencing defendant to life imprisonment. Motion for new trial was overruled and this appeal perfected. Defendant was represented both in the District Court and on appeal by the public defender.

Defendant's counsel on appeal offers as "arguable matters" the sufficiency of the evidence and appellate consideration of the punishment. Defendant has filed a pro se supplemental brief arguing three additional assignments of error.

As the sufficiency of the evidence is in issue, we note the following testimony produced at the trial. It appears that on March 2, 1968, at about 8 o'clock A.M., Charles Harris was eating breakfast in an Oklahoma City restaurant seated at a

booth with Gracie Mae Cobb. Defendant, who walked on artificial legs, came in the front door and told Frances Wright, one of the waitresses, that he was mad and was going to kill some un-named woman, and displayed a gun. Frances Wright immediately went to the kitchen to tell her father, the proprietor.

Gracie Mae Cobb testified that defendant approached the booth where she and Harris were seated and some words ensued between defendant and Harris, who had then arisen from the booth. The proprietor, Willie Smith, emerged from the kitchen and by this time defendant and Harris were somewhere near the center of the room. Willie Smith prevailed upon Harris to return to his breakfast, pushing him back to his booth and defendant returned the gun to his pocket. Willie Smith then took defendant over to the front of the bar on the opposite side of the room. Harris then left his booth and approached defendant and Willie Smith, who was almost between them. Defendant asked Harris to "Get back off of me". Defendant was backing up and Gracie Mae Cobb testified that defendant said, "Don't come up on me". Willie Smith testified that defendant at this point exclaimed "Look out. He's got a knife", whereupon Willie looked toward Harris, and said, "Yeah, that man ain't got no knife", whereupon defendant fired two shots at Harris, "one right behind the other."

Velma Davis testified that Harris was walking toward defendant with his hands down, "he sort of kept his hands down, you know, like he had something in it", and defendant kept telling this man to get back, but when he didn't get back, that's when defendant shot him. She also testified to an apparently longer time interval between the two shots: "And then when he shot him the first time, he went back this way (indicating) but he came back up." Defendant then stepping back and repeating "Don't come up on me." "And when he come back up, that's when I heard another shot."

After the shooting defendant exclaimed "Where's the knife?" But no knife was found on or about Harris. Neither Gracie Mae, Frances, Willie, nor Velma ever saw any knife or weapon in Harris's hands, although Velma said he held his hands down "like he had something in it."

After the shooting defendant attempted to secrete the pistol, but Willie Smith retrieved it and turned it over to police officers, who arrived within a few minutes. The gun was a .38 cal. revolver, loaded with three live rounds and two spent cartridges.

Defendant told the arresting officer that he thought Harris had a knife, and several days later told the investigating officer that he had to shoot because Harris had pulled a knife on him. Harris died from the gunshot wounds inflicted by defendant's gun.

■ It is apparent from a review of the evidence that there was competent evidence before the jury from which it could reasonably conclude that the defendant was guilty as charged. Although the jury was instructed as to the law regarding self-defense they found the defendant guilty of murder. The evidence on questions of fact are largely matters within the jury's sound discretion to weigh and judge. This Court has frequently held, as stated in Cantrell v. State, Okl.Cr., 462 P.2d 342 (1969):

> "Where the evidence is conflicting and different inferences may be drawn therefrom, it is the province of the jury to weigh evidence and determine the facts. The function of the Criminal Court of Appeals is limited to ascertaining whether there is a basis, in evidence, on which jury can reasonably conclude that accused is guilty as charged."

■ Defendant, in his pro se supplemental brief, urges as error failure of his counsel to advise him of his right "to compulsory process for obtaining witnesses." Defendant does not cite authority, the record, or otherwise attempt to show how he was denied the benefit of calling any witness. The record indicates that one witness was

called for the defendant, Velma Davis, whose testimony attempted to substantiate the defendant's claim of self-defense. We must presume that if there had been other witnesses who would have been of assistance to defendant's case that the same would have been called. We therefore conclude that there is no merit to defendant's contention and fail to find any indication of incompetency or inadequate representation of counsel.

 Defendant further cites as error "suppression of evidence," because defendant's counsel at trial did not pursue the issue that defendant was released by the police who investigated the shooting without charging defendant with any crime at that time. The victim of the crime lingered for some three days after the shooting before he died. During this interim the defendant was apparently not charged with a crime and was free of any custody. We find no basis for the suggestion that counsel inadequately protected his client at this point in the trial. The fact of defendant's release was brought out by defense counsel and was before the jury for consideration. A defendant in a criminal prosecution represented by court appointed counsel or retained counsel is not entitled to a perfect trial and in the absence of a clear indication that counsel was inadequate there is no violation of constitutional rights. Smith v. State, Okl.Cr., 462 P.2d 328 (1959). Dissatisfaction with the result of the trial is no basis for a claim of inadequate representation by counsel. Hines v. Baker, D.C., 309 F.Supp. 1017.

 Defendant further cites as error the failure of the trial court to sentence him under the indeterminate sentence act, 57 O.S.Supp.1970, § 353, which provides in part:

"In all cases where a sentence of imprisonment in the penitentiary is imposed, the court in assessing the term of the confinement *may* fix a minimum and a maximum term * * *."

This statute uses the word "may" and not "shall" which is the mandatory form. This Court previously held in Cooper v. State, Okl.Cr., 415 P.2d 1009:

"The Indeterminate Sentence Act provides the court with a 'discretionary alternative' in sentencing individuals to terms of imprisonment * * *."

The assessment of a minimum-maximum term is thus an alternative method of sentencing which is not mandatory upon the court at the time of sentencing and the failure to impose a minimum-maximum term does not violate any right belonging to a defendant. Hardway v. Page, Okl.Cr., 446 P.2d 72 (1968).

 The final contention raised on appeal is appellate consideration of the punishment. The punishment for conviction of murder is provided in 21 O.S.1961, § 707, as follows:

"Every person convicted of murder shall suffer death, or imprisonment at hard labor in the state penitentiary for life, at the discretion of the jury."

The discretion of the jury upon finding the defendant guilty of murder was either to assess his punishment at death or life imprisonment. Obviously then the sentence imposed upon the defendant is within statutory limits. Furthermore, there is no indication in the briefs or the record of errors or passion and prejudice which would have inflamed the jury to impose a sentence inconsistent with the facts. Accordingly there is no basis for modification of the sentence.

The judgment and sentence is hereby affirmed.

BRETT, P. J., and BUSSEY, J., concur.