Richmond Gene WYATT, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–85–372.

Court of Criminal Appeals of Oklahoma.

March 23, 1988.

---

E. Alvin Schay, Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., David Lee, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Richmond Gene Wyatt, appellant, was tried by jury and convicted of Possession and Concealment of Stolen Property [21 O.S. 1981, § 1713], in Case No. CRF-83-280, in the District Court of Carter County, Oklahoma, the Honorable Thomas Walker, Associate District Judge, presiding. The jury was unable to agree on the punishment and requested that punishment be assessed by the trial judge. The trial court set punishment at imprisonment for five (5) years. We affirm.

The State presented evidence of a theft on June 22, 1983, of oil field equipment from a well servicing company in Kay County. During the latter part of July 1983, James Calvin Brown and the appellant approached B.M., a farmer in Carter county, and asked him to find a buyer for some oilfield equipment in their possession. B.M. told Brown and the appellant that he did not want to buy the equipment but might be able to find a buyer for them. B.M. then went to the Carter County Sheriff's Department that same day and reported the contact made by Brown and the appellant. B.M. candidly admitted on the stand that his motive in making this report to the Sheriff was to collect a $10,000 reward offered for the recovery of stolen oil field equipment. The Sheriff forwarded the information to the Federal Bureau of Investigation, which in turn contacted the Oklahoma State Bureau of Investigation.

The F.B.I. interviewed B.M. and asked that he stall Brown and the appellant. In the meantime, the F.B.I. asked that B.M. have Brown and the appellant take him to see the equipment and, if possible, obtain a serial number. B.M. picked up Brown and they drove to the appellant's step-brother's farm. The appellant met them at the farm and showed B.M. the equipment hidden in a brush pile. B.M. memorized part of a serial number on a set of power tongs. Brown and the appellant informed B.M. that the asking price for the equipment was $3,250. The fair market value of this equipment was established at trial at $43,000. B.M. responded that his buyer would pay $3,000 but no more.

After the F.B.I. determined that the partial serial number on the power tongs sup-

plied by B.M. matched the serial number for the power tongs stolen in Kay County, they introduced B.M. to the resident O.S. B.I. agent. A few days later the O.S.B.I. called in an undercover agent and introduced him to B.M., who then called Brown from the F.B.I. office and arranged for delivery of the equipment at his farm later that day. B.M. and the undercover agent drove to the farm and waited in a wheat field for Brown and the appellant to arrive. Two agents, one from the F.B.I. and one from the O.S.B.I., concealed themselves behind some trees.

Brown and the appellant failed to arrive at the appointed time and the undercover agent sent B.M. to telephone Brown. The equipment arrived in B.M.'s absence. Brown drove one truck, while the appellant drove another truck loaded with the stolen equipment. The O.S.B.I. agent testified that he asked Brown and the appellant if they could obtain more equipment for him, and the appellant bragged about how easy it was to steal oil field equipment and how they stole this equipment in broad daylight. The agent asked Brown and the appellant where they got this equipment so he could avoid selling it in the same counties. They responded that the equipment came from Kay and Caddo Counties. The appellant talked about how to remove the serial numbers and restamp new serial numbers on the equipment, as well as how to remove other identifying marks.

The undercover agent talked to Brown and the appellant for about fifteen to twenty minutes until B.M. returned. The appellant then asked $3,250 for the equipment. The agent said he only had $3,000, and Brown and the appellant agreed to this price. The agent walked to his truck for the money, the prearranged signal to the other agents that the buy had taken place. The F.B.I. and the O.S.B.I. agents emerged from their hiding places and arrested Brown and the appellant.

The defense told an entirely different story. Brown took the stand and revealed his guilty plea given the day before the trial. Brown testified that the appellant, his first cousin, did not participate in any conversations with B.M., nor was the appellant present when Brown took B.M. to look at the equipment concealed in the brush pile. Brown testified that the appellant did not know the equipment was stolen and was merely doing him a favor by driving the truck.

The appellant testified he knew nothing about the equipment being hidden in the brush pile, did not talk to B.M. about selling the equipment, and was only doing his cousin a favor by driving the truck. The appellant denied knowing the equipment was stolen and denied telling the O.S.B.I. undercover agent anything about stealing the equipment, removing serial numbers, or discussing a sale price.

For his first assignment of error, the appellant asserts that the evidence was insufficient to prove beyond a reasonable doubt that he knew the equipment was stolen or that he concealed the stolen property. Two of the essential elements of possession and concealment of stolen property are (1) knowledge that the property was stolen, and (2) an act of concealing it in some manner from its rightful owner. *Bookman v. State*, 661 P.2d 909, 910 (Okla. Crim.App.1983); *Bussett v. State*, 646 P.2d 1293, 1294 (Okla.Crim.App.1982). We find that the testimony elicited from the State's witnesses, if believed, established that the appellant knew the property was stolen and tried to conceal it from its rightful owner. Had the jury believed the appellant and his witness, the State would not have established the essential elements of knowledge and concealment. The jury chose to believe the State's witnesses, and convicted the appellant.

The critical inquiry by a reviewing court of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Spuehler v. State*, 709 P.2d 202, 203–04 (Okla.Crim.App.1985),

adopting the test established by *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). Under the *Jackson* test, it is still the responsibility of the jury to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. The role of the jury is preserved as the factfinder and the weigher of the evidence. *Jackson*, at 319, 99 S.Ct. at 2789. Credibility of witnesses and the weight to be given to their testimony is within the exclusive province of the jury, and the jury may believe one witness while discounting the testimony of another witness. *Renfro v. State*, 607 P.2d 703, 706 (Okla.Crim.App.1980). This Court on review will accept all reasonable inferences and credibility choices that tend to support the jury's verdict. *Washington v. State*, 729 P.2d 509, 510 (Okla.Crim.App.1986). The duty of this Court on review is to determine whether the record evidence reasonably supports a finding of guilt beyond a reasonable doubt. *Jackson, supra*, 443 U.S. at 318, 99 S.Ct. at 2788. After reviewing the record evidence in the light most favorable to the State, we find that a rational trier of fact could have found the appellant guilty of possession and concealment of stolen property beyond a reasonable doubt. This assignment of error is without merit.

For his second assignment of error, the appellant asserts that the sentence imposed is disproportionate and excessive when compared to the sentence imposed on his co-defendant Brown. Both the appellant and his co-defendant were charged with possessing and concealing stolen property. Each was sentenced to imprisonment for five (5) years.

■ The facts and circumstances of this case reveal the evidence amply supports the verdict of the jury; the record is free from error which would justify a modification or reversal; and the punishment imposed is within the range provided by statute. *Fincher v. State*, 711 P.2d 940, 942–43 (Okla.Crim.App.1985). Nor does the sentence imposed shock the conscience of the Court, requiring modification of the sentence. *Shultz v. State*, 715 P.2d 485, 488 (Okla.Crim.App.1986).

The appellant further argues that his participation in the crime was less than that of his co-defendant, yet both received the same sentence for the same crime. Therefore, his sentence should be reduced to reflect his lesser participation. The statute does not require sentencing in proportion to involvement; neither does the statute prevent the trier of fact from taking into account the relative participation of the parties when determining the appropriate sentence. Here, punishment was assessed within the statutory range. We will not substitute our judgment for that of the trier of fact in the absence of error at trial. This assignment of error is without merit.

■ For his third assignment of error, the appellant asserts that the sentence imposed by the court is not justified by the evidence, because the State's chief witness, B.M., had an interest and stake in the outcome of this case, i.e., collection of the $10,000 reward, relying on *Miller v. State*, 481 P.2d 175, 179 (Okla.Crim.App.1969). We disagree. In *Miller*, we modified the sentence because the chief witness testified he would be assisted in obtaining "trusty" status in the penitentiary if he testified. Additionally, there were inconsistencies in the testimony of the State's other witnesses, which undermined the value of their testimony, and numerous references were made to other stolen property not supported by evidence. Here, B.M.'s testimony was fully corroborated. The partial serial number he obtained from the equipment while it was still in the brush pile matched the F.B.I.'s list of serial numbers of the equipment stolen in Kay County, and the property recovered when the appellant was arrested corresponded to that equipment identified earlier. Furthermore, the most damaging testimony against the appellant came not from B.M., but from the undercover O.S.B.I. agent. The inconsistencies came not from the State's witnesses,

but rather from the conflicting testimony between the State's witnesses and the defense's witnesses. This assignment of error is without merit.

For his final assignment of error, the appellant claims that fundamental error occurred when the trial court failed to instruct the jury on the appellant's defense theory. We observe initially that the appellant made a blanket objection to all the instructions but did not offer any instructions of his own, thereby failing to preserve this issue for appellate review. *Dixon v. State*, 732 P.2d 4, 5 (Okla.Crim.App. 1987). Additionally, the appellant claimed at trial that he was merely doing his cousin a favor by driving the truck and denied committing the offense. Failure to raise a defense and denying commission of the crime waives any requirement that the trial court *sua sponte* instruct the jury on the appellant's "defense." *See Howard v. State*, 738 P.2d 543, 546 (Okla.Crim.App. 1987). This assignment of error is without merit.

Accordingly, for the foregoing reasons, the judgment and sentence should be, and hereby is, AFFIRMED.

BRETT, P.J., concurs.

BUSSEY, J., concurs in result.