Jack Lauren MARTIN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–87–67.

Court of Criminal Appeals of Oklahoma.

Oct. 19, 1988.

William Rodney Devilliers, Jr., Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Jack Lauren Martin, the appellant, was tried by jury and convicted of six (6) counts of Solicitation of First Degree Murder (21 O.S.1981, § 701.16), After Former Conviction of a Felony (21 O.S.1981, § 51), in Oklahoma County District Court, Case No. CRF–83–3244, before the Honorable William H. Henderson, District Judge. The jury set punishment at ten (10) years imprisonment on each count. Judgment and sentence was imposed in accordance with the jury's verdict, the sentences to run consecutively. We affirm.

Appellant's first trial in 1983 resulted in a mistrial due to a deadlocked jury. He was convicted in a second trial in 1984; however, this Court unanimously reversed the conviction for a new trial based on unauthorized communications to the jury during deliberations. *Martin v. State*, 714 P.2d 602 (Okla.Crim.App.1986).

The State presented evidence at trial that in December of 1982, appellant completed a complex agreement to purchase the Baton Rouge Rodeway Inn in Louisiana from Rudy Gerdes, a Belgium businessman. Appellant fell behind in his payments in early 1983. On May 23, 1983, Louisiana State Police Sergeant Bill Cox placed a body microphone on Mike Wood, a confidential informant, prior to a conversation between Wood and appellant in front of the Rodeway Inn. During the recorded conversation, appellant expressed his desire to have Mr. Wood murder Mr. Gerdes after Gerdes signed documents clearing appellant from the motel debt. Appellant indicated the murder would take place in Oklahoma, and that he would pay Mr. Wood $10,000.00. On June 1, 1983, appellant met Louisiana State Police Undercover Narcotics Agent Payne Scott in a bar owned by appellant at the Rodeway Inn. Agent Scott, Mr. Wood and appellant discussed appellant's plan to have Mr. Scott kidnap Mr. Gerdes, force him to sign papers releasing appellant's financial obligation on the Rodeway Inn, and then kill Gerdes in Oklahoma, in a manner that would appear to be accidental.

Scott was to receive $10,000.00 initially, and $63,000.00, after the murder.

On June 20, 1983, appellant met Agent Scott and Mr. Wood. Appellant told Scott he wanted five people killed besides Mr. Gerdes, including the attorney who drafted the sale agreement, his secretary, and two real estate agents. Agent Scott began backing out because the arrangement was getting too complicated and the price, now $100,000.00, was too low. Having previously contacted the Oklahoma State Bureau of Investigation, Agent Scott arranged for OSBI Special Agent Cary Thurman to represent himself to appellant as "hit man" Terry Sherman.

Agent Thurman received a telephone call from appellant on June 21, 1983, and met with appellant at Will Rogers Airport in Oklahoma City on June 25, 1983. Appellant told Agent Thurman about his financial difficulties in relation to the Rodeway Inn and mentioned six people he wanted killed. In addition to the people appellant had already mentioned to Agent Scott, he named an associate attorney who had worked on the Rodeway Inn transaction. Appellant requested that certain documents be signed by the victims before their deaths, and agreed to send Agent Thurman $1,500.00 for expenses. On June 27, 1983, at appellant's request, one of his employees wired $1,500.00 to "Jessie Lee" through Western Union. That same day, OSBI secretary Kathy Hicks received a phone call on a special undercover telephone at OSBI headquarters from "Jack", who told Hicks that Terry Sherman could pick up the money in the name of Jessie Lee at a specified address. Agent Thurman picked up the $1,500.00 money order through Western Union in the manner specified. Appellant was charged with six counts of Solicitation of Murder in Oklahoma County that afternoon, and was arrested in Baton Rouge, Louisiana, on July 28, 1983.

At trial, appellant relied upon the defenses of duress and entrapment. He said he tried to back out of the deal several times, but that undercover agents Scott and Thurman, as well as confidential informant

Wood, threatened his life in order to force him to continue with his plans. Appellant further testified that Agent Scott and Mr. Wood forced appellant to wire the money to Agent Thurman in Oklahoma City.

I.

The question of first impression presented by appellant in his first assignment of error, is whether Solicitation of First Degree Murder, 21 O.S.1981, § 701.16, is applicable where the murder is to take place outside Oklahoma. In short, appellant claims he could not be convicted of solicitation of first degree murder where the alleged murders were to take place, if at all, outside the State of Oklahoma. We disagree.

█ Oklahoma statutes "are to be liberally construed with a view to effect their objects and to promote justice." 25 O.S. 1981, § 29. The evidence presented at trial showed that appellant solicited Agent Thurman to commit acts which would constitute six (6) counts of first degree murder as defined in 21 O.S.1981, § 701.7. Contrary to appellant's assertions, we cannot fairly read Section 701.16 to require that the solicited murder take place in Oklahoma. Title 21 O.S.1981, § 701.16 makes it "unlawful for any person ... to *solicit* another person ... to cause the death of a human being by the act of murder in the first degree as is defined by Title 21 O.S., Section 701.7." (emphasis added) The evidence established that the solicitation took place in Oklahoma, at Will Rogers Airport in Oklahoma City.

We believe the purpose of Section 701.16 is not only to prevent acts of first degree murder, but to protect Oklahoma residents from being exposed to inducements to commit such acts. Accordingly, we find persuasive Justice Traynor's opinion for the California Supreme Court in *People v. Burt*, 45 Cal.2d 311, 288 P.2d 503, 505 (1955). The evils sought to be prevented by Section 701.16 are present regardless of whether the object of the solicitation is to be accomplished within or without Oklahoma. *See Burt*, 288 P.2d at 505–06. A construction of Section 701.16 limiting its application to solicitation of acts constituting first degree murder that are accomplished within Oklahoma would defeat, rather than effect, its objects, and would not promote justice. *Id. See also* 25 O.S. 1981, § 29; *Phelps v. State*, 598 P.2d 254, 257 (Okla.Crim.App.1979). This assignment is without merit.

II.

█ In his second assignment of error, appellant asserts the trial court erred in admitting an enhanced duplicate of the original tape recorded conversation between appellant and Mr. Wood on May 23, 1983, State Exhibit 22, and a transcript of said tape, State Exhibit 22–A. At trial, the original tape, State Exhibit 21, was admitted without objection. (Tr. 348) The record reflects that the original tape, State Exhibit 21, contained inaudible portions because of bad batteries in the recording device. Louisiana State Police Lieutenant William Cox testified that the duplicate was an accurate copy of the original tape, and was made to correct speed variables thus resulting in some degree of enhancement of the inaudible portions of the original tape.

Contrary to appellant's claim, we find no support in the record for exclusion of the duplicate under the relevant provisions of the Oklahoma Evidence Code. *See* 12 O.S. 1981, §§ 3001–3003. Nor was it error to publish the transcript of the duplicate tape to the jury for limited use during the playing of the tape, since the transcripts were not admitted into evidence. *Brassfield v. State*, 719 P.2d 461, 463 (Okla.Crim.App. 1986). Admission of the tape recordings was within the sound discretion of the trial court. *Cooper v. State*, 671 P.2d 1168, 1172 (Okla.Crim.App.1983). Under the circumstances presented, we cannot say the trial court abused its discretion in admitting both the original tape and the enhanced duplicate.

III.

█ In his third and final assignment of error, appellant claims the trial court im-

properly limited defense counsel's cross-examination of the State's witnesses, and closing argument. Appellant has failed to support his contentions with relevant citations of authority. *Hines v. State*, 684 P.2d 1202, 1205 (Okla.Crim.App.1984). The extent of cross-examination is within the sound discretion of the trial court, whose ruling will not be disturbed on appeal absent a clear abuse of discretion resulting in manifest prejudice to the accused. *Hall v. State*, 698 P.2d 33, 36 (Okla.Crim.App. 1985). We find no such abuse of discretion here. With regard to the alleged improper limitation on closing argument, we find the trial court properly interrupted defense counsel because he referred to prior proceedings against appellant. *See Master v. State*, 702 P.2d 375, 381 (Okla.Crim.App. 1985). This assignment is likewise without merit.

Accordingly, the judgments and sentences are AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.