2005 OK CR 28

**Ray Dean McHAM, Appellant**

v.

**STATE of Oklahoma, Appellee.**

**No. F–2004–450.**

Court of Criminal Appeals of Oklahoma.

Dec. 14, 2005.

---

Charles E. Douglas, attorney at law, Norman, OK, attorney for defendant at trial.

Charles N. Gray, Assistant District Attorney, Pauls Valley, OK, attorney for the State at trial.

Alecia Felton George, George Law Office, Mustang, OK, attorney for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Donald D. Self, Assistant Attorney General, Oklahoma City, OK, attorneys for the State on appeal.

## OPINION

C. JOHNSON, Judge.

¶1 Appellant, Ray Dean McHam, was charged in Garvin County District Court, Case No. CF–2002–266, with First–Degree (Premeditated) Murder (21 O.S.2001, § 701.7(A)). The jury found Appellant guilty of the lesser offense of First–Degree (Heat of Passion) Manslaughter (21 O.S.2001, § 711(2)), and recommended a sentence of twenty years imprisonment. On April 30, 2004, the Honorable Candace L. Blaylock, District Judge, sentenced Appellant in accordance with the jury's recommendation. Appellant then timely filed this appeal.

¶2 On the night of August 25, 2002, Appellant fatally stabbed his neighbor, Johnny

McElwee. Appellant lived in Pauls Valley with his wife Peggy and their young daughter, and McElwee lived alone, next door, in a garage apartment. The two men were visiting with each other on the night of the homicide, and Appellant made several visits to McElwee's apartment. The only witnesses to the altercation were Appellant and McElwee. Police learned of the homicide when Appellant's wife called 911 in the early morning hours of August 26, exclaiming that her husband had just fatally stabbed a man. McElwee's body was found on the ground outside the apartment, in the early morning hours of August 26; he had suffered thirteen stab wounds, some of which were not life-threatening, but several of which were. Toxicology reports showed a high degree of alcohol, and a detectable amount of methamphetamine, in McElwee's body. Inside McElwee's apartment police found furniture in disarray. A section of the wall had been crushed in. Traces of blood were found throughout the apartment.

¶ 3 The State theorized that Appellant killed McElwee in unjustified anger, using McElwee's own knife, believing that McElwee had stolen his wallet earlier in the evening. Appellant made a claim of self-defense; he claimed that an intoxicated McElwee made a sexual advance toward him, and followed up by threatening Appellant with a knife. Appellant testified that he was able to wrest the knife away from McElwee, and that he stabbed McElwee in an attempt to get away from him.

¶ 4 Appellant said that earlier that evening, McElwee began drinking whiskey; Appellant claimed he had only one beer the entire night. The two men visited and Appellant made several trips back and forth between McElwee's apartment and his own home. At one point, while Appellant was trying to fix McElwee's CD player, McElwee allegedly pulled Appellant's wallet out of his back pocket in a joking manner. Appellant also said that at some point in the evening, he saw McElwee go into his bathroom with a small package of what appeared to be methamphetamine.

¶ 5 Later that evening, as he prepared for bed, Appellant noticed that his wallet was missing. He was very concerned because it contained all of his family's funds. Appellant testified that he and Peggy searched for the wallet, inside the house and out, to no avail. Appellant then walked to McElwee's apartment to see if his wallet was there. Appellant denied being angry or suspecting McElwee of actually taking the wallet. Peggy McHam, testifying for the State, corroborated her husband's story on these points.

¶ 6 Appellant said that when he arrived at the apartment, McElwee was sitting on the couch and appeared to be drunk. Appellant testified that as he rummaged around the couch, looking under cushions for his wallet, McElwee reached out and groped his genitals. Appellant said this made him feel very uncomfortable, and that when he rebuffed McElwee, McElwee displayed a lock-blade knife and said something to the effect of, "I do what I want to do.... This is my daddy's knife. I'm going to stick you." Appellant testified that McElwee poked at him with the knife, but that he was able to grab McElwee's arm and avoid injury. The two men fought over the knife for a time; Appellant said that when he gained control of the knife and attempted to leave, McElwee grabbed him, and the two fought in a corner of the apartment. Appellant identified the site in one of the photos taken by police, showing the jury how McElwee had pushed him into the wall so hard as to break the sheetrock. Appellant stabbed at McElwee with the knife. Appellant testified that the entire struggle lasted only a couple of minutes. Eventually McElwee relented, and Appellant was able to get away.

¶ 7 Appellant testified that he went home, told his wife what had happened, and cleaned himself up. He showered and put his blood-stained clothing, and McElwee's knife, in a trash bag. Appellant admitted that he did not attempt to call police, but instead, went back outside to look for his wallet again.[1] It was then, he said, that he discovered McElwee's body, lying between the two houses. With his wife's assistance, Appellant wrapped McElwee's body in a plastic rain poncho and

---

1. Appellant's wallet was later found, unmolested, by police searching the McHams' home.

unsuccessfully attempted to use an engine hoist to lift the body into the bed of Appellant's pickup truck. Appellant asked his wife to dispose of the bag containing his bloody clothing and McElwee's knife. During this time period, Peggy McHam was able to walk to a nearby convenience store, without her husband's knowledge, and call 911. Appellant walked several miles to the town of Stratford, where he and his wife had recently rented a house which they were in the process of moving to. He was there for several hours, moving belongings around the premises. When police arrived at the Stratford home later that afternoon, Appellant immediately surrendered and pleaded with them not to shoot him. Appellant gave a statement to police, which was recorded on videotape and played for the jury.

¶ 8 The defense presented substantial evidence of McElwee's reputation for violence. Appellant testified that McElwee had bragged about this reputation to him, and once said, "I'm a bad man with a knife and a bat, so nobody [messes] with me." The defense also presented evidence, including expert testimony, of Appellant's mental health problems. Appellant had been admitted for treatment several times since he was a young teenager. He was diagnosed as bipolar (manic-depressive) with Intermittent Explosive Disorder. One of his admissions was prompted by the fact that at the age of thirteen, he had threatened his sister with a knife. The defense pointed out that Appellant had been prescribed several medications for his disorders, but that he was not taking them at the time of the homicide; Appellant said he could not afford them. Additional facts will be presented as relevant to the propositions of error.

¶ 9 In Proposition 1, Appellant challenges the sufficiency of the evidence to prove, beyond a reasonable doubt, that he did not act in self-defense. In Proposition 2, he claims the trial court erred by instructing the jury on the lesser related offense of First–Degree (Heat of Passion) Manslaughter over his objection. These issues are interrelated, and we address them together.

■ ¶ 10 By charging Appellant with First–Degree Murder, the State was obligated to prove that he killed McElwee with a deliberate intention to do so. 21 O.S.2001, § 701.7(A). Appellant maintained, from his arrest through trial, that he acted in self-defense. Self-defense is an affirmative defense which admits the elements of the charge, but offers a legal justification for conduct which would otherwise be criminal. 21 O.S.2001, § 733; *West v. State*, 1990 OK CR 61, ¶ 6, 798 P.2d 1083, 1085. Appellant told police, after his arrest, that he acted in self-defense after McElwee assaulted him with a knife, and he testified to the same effect at trial. The evidence was sufficient to submit the issue of self-defense to the jury. Consequently, the State was obligated to prove, beyond a reasonable doubt, that Appellant did not act in self-defense. *Perez v. State*, 1990 OK CR 67, ¶¶ 5–8, 798 P.2d 639, 640–41. The jury was properly instructed on the State's burden to disprove Appellant's self-defense theory.

■ ¶ 11 After the close of the evidence, the trial court indicated that it also intended to instruct the jury on the lesser related offense of First–Degree "Heat of Passion" Manslaughter. 21 O.S.2001, § 711(2). This variant of criminal homicide requires (1) adequate provocation of the accused; (2) a passion such as fear, terror, anger, rage or resentment engendered in the accused; (3) that the homicide occurred while the passion still existed, and before the accused had a reasonable opportunity for the passion to cool; and (4) a causal connection between the provocation, passion and homicide. *Cipriano v. State*, 2001 OK CR 25, ¶ 16, 32 P.3d 869, 874. The State did not affirmatively request instructions on this alternative, and defense counsel objected to them, maintaining that there was no evidence tending to show that Appellant was acting in a "heat of passion" when the stabbing occurred. The trial court overruled the defense objection and instructed on the lesser-offense alternative, which the jury ultimately convicted Appellant of.

¶ 12 Appellant relies on *Shrum v. State*, 1999 OK CR 41, 991 P.2d 1032, for his claim that he was entitled to waive any lesser related offense instructions and opt for an "all or nothing" approach, if only because the State did not affirmatively request any lesser

offense instructions itself. We find it necessary to clarify the law in this regard.

¶ 13 In *Shrum*, the defendant was charged with premeditated murder, and he presented evidence of self-defense. At the close of the evidence, the State requested instructions on the lesser offense of First–Degree, Heat of Passion Manslaughter. Defense counsel neither concurred in the request nor objected to it. The trial court gave the instructions, and the jury found the defendant guilty of the lesser offense. In affirming the defendant's manslaughter conviction in *Shrum*, we reiterated the long-standing rule that the trial court should instruct the jury on any lesser offense that is reasonably supported by the evidence, so long as the accused is not unfairly surprised by the lesser-offense theory such that he had no adequate opportunity to defend against it. *Shrum*, 1999 OK CR 41, ¶¶ 6–11, 991 P.2d 1032, 1034–37.

 ¶ 14 We have long recognized that when a defendant is charged with first-degree, premeditated murder, and he counters the charge with a claim of self-defense, the facts may be such as to warrant conviction on a lesser form of homicide, particularly heat-of-passion manslaughter. The fear of being injured or killed, such as might justify using deadly force in self-defense, is a kind of "passion" contemplated by the offense of heat-of-passion manslaughter.

> It is the general rule that passion resulting from fright or terror may be sufficient to reduce a homicide from murder to manslaughter and such a killing may be closely akin to a killing in self-defense.... *A homicide may be reduced from murder to manslaughter where the killing was done because the slayer believed that he was in great danger, even if he was not warranted in such belief or where the slayer although*

> *acting in self-defense was not himself free from blame.*

*Wood v. State*, 1971 OK CR 232, ¶ 9, 486 P.2d 750, 752 (emphasis added). *See also Hayes v. State*, 1981 OK CR 96, ¶ 2, 633 P.2d 751, 752. Indeed, the language of Oklahoma's First–Degree Manslaughter statute expressly recognizes that the line between justifiable homicide (*e.g.* an intentional homicide committed in self-defense), and homicide committed in a heat of passion, is a fine one.[2] Depending on the evidence, a jury might conclude that the defendant's self-defense claim is "imperfect," and while not sufficient to negate culpability, at least sufficient to mitigate it. In such situations, instructions on heat-of-passion manslaughter may indeed be warranted.[3]

 ¶ 15 We find that the trial court's decision to instruct the jury on heat-of-passion manslaughter is supported by the evidence presented by both parties, and that the theory did not unfairly surprise the defense. The State posited that Appellant killed McElwee in anger, out of a mistaken belief that McElwee had stolen his wallet. Appellant claimed he only stabbed McElwee as he tried to get away from McElwee's threatening sexual assault. Appellant admitted he was extremely upset at having lost the wallet. Although he denied suspecting McElwee of having stolen it, Appellant testified that after the stabbing, he did not call police, but continued to look for his wallet instead. Appellant told police that homosexuality was extremely disturbing to him, and that he interpreted McElwee's conduct as a sexual assault, but did not say that McElwee made any specific verbal threat to that effect. At trial, Appellant claimed McElwee did make a specific verbal threat while wielding the knife. Appellant told police that he got con-

---

**2.** *See* 21 O.S.2001, § 711(2) (homicide is manslaughter in the first degree "[w]hen perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; *unless it is committed under such circumstances as constitute excusable or justifiable homicide*") (emphasis added).

**3.** *See generally Morgan v. State*, 1975 OK CR 89, 536 P.2d 952, for an insightful discussion on this issue. *Morgan* was subsequently overruled, but

only insofar as it had been interpreted to hold that in *every* prosecution for first-degree, premeditated murder, if self-defense has been raised, the trial court's failure to instruct on heat-of-passion manslaughter is *per se* reversible error. *Walton v. State*, 1987 OK CR 227, ¶¶ 7–9, 744 P.2d 977, 978–79. *Walton* merely reiterates that the propriety of lesser-offense instructions depends on an examination of the circumstances of the particular case. *Walton*, 1987 OK CR 227 at ¶ 9, 744 P.2d at 978–79.

trol of the knife and quickly fled McElwee's apartment, but the condition of the apartment, and the number of stab wounds McElwee sustained, were not entirely consistent with this account. Furthermore, Appellant presented evidence of his psychological problems, and the fact that he was not taking needed medication, in an attempt to explain his conduct. Thus, the totality of evidence pitted an intoxicated man with an unquestionably violent disposition (McElwee) against an emotionally distraught man with psychological problems who was not taking necessary medication (Appellant). A rational juror could conclude that, whether enraged about his missing wallet or subjected to a sexual assault, Appellant's continued use of deadly force after gaining control of the knife—sufficient to inflict some thirteen wounds—was not justified.

¶ 16 Having found that heat-of-passion manslaughter was a necessarily included lesser offense to premeditated murder under these facts, we turn to whether Appellant nevertheless had an absolute right to bar the trial court from instructing on that alternative. In *Shrum*, 1999 OK CR 41, ¶ 11, 991 P.2d at 1036–37, we held that if the trial court *sua sponte* "proposes" lesser-offense instructions and the defendant objects to them, the defendant may affirmatively waive his right to such instructions and proceed on an "all or nothing approach," citing *O'Bryan v. State*, 1994 OK CR 28, ¶ 11, 876 P.2d 688, 689–690, as illustrating this principle. Appellant contends that under *O'Bryan* and *Shrum*, his objection to lesser-offense instructions should have prevented the trial court from giving them. We disagree.

¶ 17 In *O'Bryan*, the State did not request, and the trial court did not seek to give, lesser-offense instructions. Defense counsel simply made a record that he had discussed the option of requesting lesser-offense instructions with his client, and the client, on the record, confirmed that she wished to proceed without making such a request. *O'Bryan* did not purport to restrict trial courts from instructing on related offenses

reasonably supported by the evidence; it merely recognized that a defendant who knowingly and intelligently takes one strategic position at trial may not change her position on appeal.[4]

¶ 18 Nor does *Shrum* establish any absolute right on the part of the defense to "bar" lesser-offense instructions that are otherwise warranted by the evidence. In *Shrum* we held that if the State requests the instructions and the defendant objects, the trial court should consider whether the defense would be unfairly surprised by the lesser-offense alternative. Thus, under the procedure described in *Shrum*, the defendant's "right" to adopt an all-or-nothing strategy is trumped by the State's request for lesser-offense instructions (assuming, of course, that the lesser-offense alternative is supported by the evidence and does not unfairly surprise the defense). If the State in this case had affirmatively requested manslaughter instructions, there is no question that the trial court, on this record, could have given them regardless of Appellant's objection, consistent with the language in *Shrum*.

¶ 19 We recognize that in our adversary system of justice, parties must make strategic decisions based on continually changing assessments of risk. Strategy is affected by the evidence available, and it can affect the evidence presented. The parties have a right to advance their respective strategies; but gamesmanship aside, the purpose of the criminal law is to address public wrongs. 21 O.S.2001, §§ 3, 7; 22 O.S.2001, §§ 10, 11. The people of this State are, in the most literal sense, a party to every criminal prosecution. The public has an undeniable interest in seeing that offenders are appropriately punished for their crimes.

¶ 20 The trial court has a responsibility to instruct the jury on all of the law applicable to the evidence presented. *Bland v. State*, 2000 OK CR 11, ¶¶ 54–57, 4 P.3d 702, 719–720. If the defendant requests instructions on a lesser related offense, the trial court should give them if the evidence reasonably makes out a *prima facie* case for

---

4. After *Shrum*, we emphasized the serious nature of such a strategy, holding that any waiver of lesser-offense instructions should be made personally, on the record, by the defendant himself after consulting with counsel. *Ballard v. State*, 2001 OK CR 20, ¶¶ 4–8, 31 P.3d 390, 391.

that offense. *Id.* We reiterate the principal holding in *Shrum:* if the State requests instructions on a lesser related offense, the trial court is free to give them, even over the defendant's objection, so long as they do not unfairly surprise the defense. We clarify *Shrum* by holding that while a defendant is free to adopt an "all or nothing" strategy with regard to any lesser-offense alternatives, the trial court is not bound by that strategy, and may instruct *sua sponte* on any lesser-related offense it believes to be supported by the evidence, without any formal request by the State.

¶ 21 As we have long held, a trial court's decisions regarding the law applicable to the facts are reviewable for abuse of discretion. If the defendant is convicted of the lesser offense and appeals, this Court may consider the sufficiency of the evidence to support the conviction, and whether the defendant was unfairly surprised by the instructions, or accepted the lesser-offense alternative as a benefit. *Shrum,* 1999 OK CR 41 at ¶ 11, 991 P.2d at 1037. If the defendant is convicted of the charged offense and complains, for the first time on appeal, that the trial court should have given some lesser-offense instruction *sua sponte,* we will consider whether the trial court's omission, in the absence of a request by the defense, amounts to plain error. *Thornburg v. State,* 1999 OK CR 32, ¶ 13, 985 P.2d 1234, 1242; *Huntley v. State,* 1988 OK CR 28, ¶ 5, 750 P.2d 1134, 1135; *Ballou v. State,* 1985 OK CR 10, ¶ 12, 694 P.2d 949, 952; *Tucker v. State,* 66 Okl.Cr. 335, 340, 92 P.2d 595, 598 (1939); *Williams v. State,* 12 Okl.Cr. 39, 43–45, 151 P. 900, 902 (1915). This inquiry involves consideration of whether any rational trier of fact could have acquitted the defendant of the greater offense and convicted instead of the lesser offense. *Phillips v. State,* 1999 OK CR 38, ¶¶ 58–60, 989 P.2d 1017, 1034–35, *cert. denied,* 531 U.S. 837, 121 S.Ct. 97, 148 L.Ed.2d 56 (2000); *Tarter v.*

*State,* 1961 OK CR 18, 359 P.2d 596, 601. This Court traditionally accords both trial judges and juries substantial deference on issues requiring assessment of the evidence.[5] *Wyatt v. State,* 1988 OK CR 58, ¶ 10, 752 P.2d 1131, 1133–34; *Edwards v. State,* 1970 OK CR 156, ¶ 9, 476 P.2d 378, 380; *Woods v. State,* 92 Okl.Cr. 53, 62, 220 P.2d 463, 468. *See also Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979).

¶ 22 In the instant case, we find the evidence was sufficient to warrant instructions on the lesser-related offense of First–Degree, Heat of Passion Manslaughter, and that the trial court did not abuse its discretion in so instructing, over Appellant's objection and despite a formal request by the State. We commend the trial court for its keen attention to the evidence and the applicable law in this case. Based on the totality of the evidence, a rational juror could have concluded, beyond a reasonable doubt, that Appellant's actions were not consistent with true self-defense, and that he killed McElwee in a heat of passion. Propositions 1 and 2 are denied.

¶ 23 In Proposition 3, Appellant claims that the trial court violated his right to spousal privilege when it allowed the State to present the testimony of his wife, Peggy McHam, and a recording of her 911 call after the homicide. Because Appellant moved to exclude this evidence on these grounds prior to trial, and renewed his objection when the evidence was presented at trial, the issue has been preserved for appellate review.

¶ 24 Communications between spouses are subject to evidentiary privilege if they were made privately to each other, and were not intended to be disclosed to any other person. 12 O.S.2001, § 2504. The spousal privilege does not apply to non-communicative acts of one spouse observed by

5. We recognize that defense counsel may sometimes be reluctant to formally request lesser-offense instructions, for fear that the request would waive any sufficiency-of-evidence claim on appeal if the jury convicts on the lesser alternative. Just as the State is free to argue to the jury that conviction on the charged offense is the only appropriate result, even when the State has itself requested a lesser alternative, the defendant may be able to argue to the trial court that lesser-offense instructions are warranted, while still maintaining his innocence before the jury. Whether a particular defendant's trial strategy estops him from complaining, on appeal, about conviction for a lesser-related offense, can only be decided on a case-by-case basis.

the other spouse. *Coleman v. State*, 1983 OK CR 101, ¶ 25, 668 P.2d 1126, 1134. The privilege does not apply to conversations between spouses had in the presence of a third person. *Id.* at ¶ 26, 668 P.2d at 1134. Furthermore, the privilege can be waived if one spouse subsequently discloses, or consents to the disclosure of, any significant portion of the privileged matter to a third person. 12 O.S.2001, § 2511.

¶ 25 Appellant does not specify what portions of Peggy McHam's 911 call, or her trial testimony, he believes were protected by spousal privilege. Her mere observations, including any conduct by Appellant not intended as verbal assertions, clearly were not protected. Most of Peggy's testimony related to observations of Appellant and McElwee on the night of the stabbing; she related very few statements made by Appellant.

¶ 26 We need not decide whether any portions of Peggy McHam's testimony, or her statements in the 911 call, were privileged, for we fail to see how any of it materially prejudiced Appellant.⁶ In the 911 call, Peggy told the dispatcher that Appellant had killed a man by stabbing him, and that he was trying to move the body and had asked her to help him. Appellant told police as much, and he testified to the same information at trial. Furthermore, Peggy's trial testimony was favorable to the defense because it corroborated Appellant's own testimony on practically every point—most notably Appellant's missing wallet, which the defense maintained was the reason for Appellant's final trip to McElwee's apartment. In fact, at trial Peggy undermined the State's theory when she stated that, while Appellant was upset about the missing wallet, he did not appear to believe that McElwee had stolen it. According to Peggy, Appellant told her right after the stabbing that McElwee had made a sexual advance toward him and threatened him with a knife. This was not only consis-

tent with Appellant's own testimony, but was in fact the essence of his self-defense claim. When a defendant objects to the introduction of evidence, but then introduces the same evidence himself, there are no grounds for reversal, even if the evidence was incompetent. *Rushing v. State*, 1984 OK CR 39, ¶ 43, 676 P.2d 842, 850.

¶ 27 As far as truly prejudicial conversations to which the spousal privilege might actually apply, we find none. Defense counsel specifically asked Peggy McHam if Appellant had ever admitted to killing McElwee with premeditated intent, and she said no. Peggy also agreed that nothing Appellant said to her that night was inconsistent with his self-defense theory. Even assuming that any statements Appellant made to his wife after the stabbing were protected by the marital privilege, Appellant has failed to demonstrate prejudice. 20 O.S.2001, § 3001.1. Proposition 3 is denied.

¶ 28 In Proposition 4, Appellant claims error when the trial court permitted the State to introduce a videotape of his post-arrest interview with police. Defense counsel filed a motion to suppress Appellant's statements, and the trial court held a hearing on the matter prior to trial. This issue has been preserved for appellate review. 12 O.S. 2001, § 2104(A)(1).

¶ 29 At the hearing, the interviewing officer, Agent Cathey, testified that he advised Appellant of his *Miranda*⁷ rights before any questioning began, and that Appellant agreed to the interview. After some questioning, Cathey asked if he might videotape the interview, and Appellant agreed to that as well. Appellant also testified at the hearing. He claimed that on being read his *Miranda* rights, he said, "This is a murder case. Don't I need a lawyer?" Appellant claimed that in response, Cathey said something to the effect of, "No, they'll just tell you not to

---

6. We note that during his interview with police, Appellant told the officers that they should ask his wife about certain matters that he could not recall, such as what had happened to his bloody clothing and McElwee's knife. Referring police to his wife for more information was arguably inconsistent with any claim of marital privilege. 12 O.S.2001, § 2511.

7. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (requiring police to advise a suspect, before any custodial interrogation, that he has the right to remain silent and to be questioned only with the assistance of counsel).

answer any questions." Cathey did not recall any such exchange. The trial court also had the benefit of the videotaped portion of the interview, which shows Appellant being re-read his *Miranda* rights, expressly agreeing to waive those rights, and agreeing to permit the interview to be recorded.

¶ 30 The trial court concluded that even if Appellant did ask if he needed a lawyer before taping began, that question did not amount to an unequivocal request for counsel, and police were not required to stop talking to him. The trial court's ruling is supported by case law. The United States Supreme Court has held that the "primary protection" afforded those subject to custodial interrogation is the *Miranda* warnings themselves; once a suspect has been advised of his right to deal with police only through counsel, interrogation may continue unless the suspect invokes that right unequivocally. To hold otherwise would unnecessarily hamper legitimate police investigation, as officers "would be forced to make difficult judgment calls about whether the suspect in fact wants a lawyer even though he has not said so, with the threat of suppression if they guess wrong." *Davis v. United States*, 512 U.S. 452, 461, 114 S.Ct. 2350, 2356, 129 L.Ed.2d 362 (1994); *see also Edwards v. Arizona*, 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981).

¶ 31 Appellant contends that his history of mental problems required the police to treat his responses with special attention. He relies on *dicta* in *Mitchell v. State*, 1994 OK CR 70, 884 P.2d 1186, where we commented that police should clarify equivocal comments about counsel from suspects who are "young, inexperienced or unfamiliar with the criminal justice system, of low intelligence, mentally disabled or ill, or overwhelmingly upset or overwrought." *Mitchell*, 1994 OK CR 70 at ¶ 8, 884 P.2d at 1193. After reviewing the videotape of the interview, we disagree with Appellant's contention. A defendant's intellectual functioning and emotional stability are certainly relevant to whether his decision to submit to custodial interrogation is voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 223, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973); *Van White v.*

*State*, 1999 OK CR 10, ¶¶ 45–49, 990 P.2d 253, 267–68. But these factors must be viewed in relation to the circumstances of the interview itself, such as whether police coerced the accused, manipulated him, or otherwise took unfair advantage of his situation. *See Colorado v. Connelly*, 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986). Appellant appeared coherent and eager to tell his version of events, and was allowed to do so with little interruption. The officers were cordial, neither intimidating nor manipulative. Appellant's statements to police were voluntary. Proposition 4 is denied.

¶ 32 In Proposition 5, Appellant contends the evidence presented at preliminary hearing was insufficient to bind him over on the charge of First–Degree Murder. Appellant preserved this claim for review by timely moving to quash the information for insufficient evidence. 22 O.S.2001, § 504.1. The fact that some of the evidence at preliminary hearing is conflicting does not necessarily negate a probable-cause finding. *Manning v. State*, 1981 OK CR 75, ¶ 4, 630 P.2d 327, 329. The State presented sufficient evidence from which the magistrate could find probable cause to believe that Appellant intentionally killed McElwee without legal justification. *McCracken v. State*, 1994 OK CR 68, ¶ 8, 887 P.2d 323, 327. This proposition is denied.

¶ 33 In Proposition 6, Appellant claims his sentence is excessive. We will only modify a sentence if, considering all relevant information, we find it shocking to the conscience. *Rea v. State*, 2001 OK CR 28, ¶ 5, 34 P.3d 148, 149. The jury recommended a sentence of twenty years, well above the four-year minimum sentence for First–Degree Manslaughter, but well below the maximum sentence of life imprisonment. 21 O.S.2001, § 711. We take judicial notice of the fact that after sentencing, the trial court suspended a portion of Appellant's sentence as permitted by law. 22 O.S.2001, § 982a. We cannot say the resulting sentence is shocking to the conscience. Proposition 6 is denied.

¶ 34 In Proposition 7, Appellant claims the trial court erred in permitting the

State to introduce copies of certain documents instead of the originals—specifically, Peggy McHam's written consent for police to search her home, and a police log of 911 calls on the night of the homicide. Whether to admit duplicates of documents is within the sound discretion of the trial court. *Martin v. State,* 1988 OK CR 241, ¶ 11, 763 P.2d 711, 713. The State offered evidence that the originals had been lost. The defense never challenged the accuracy of the copies. Moreover, the documents had no independent legal significance. The events to which they related were firmly established by the witnesses involved. *Anderson v. State,* 1985 OK CR 94, ¶ 10, 704 P.2d 499, 501–02 ("It makes no difference, under the best evidence rule, that the occurrence of the event was recorded, for this recording does not supplant the testimony of the witness who perceived it"); 12 O.S.2001, §§ 3001–03. We find no abuse of discretion here. Proposition 7 is denied.

¶ 35 Finally, in Proposition 8, Appellant argues that the cumulative effect of the errors discussed above requires reversal or modification. We have identified no errors in the preceding propositions, and where there is no error, there can be no error by accumulation. *Sanders v. State,* 2002 OK CR 42, ¶ 17, 60 P.3d 1048, 1051. This proposition is denied.

## DECISION

¶ 36 The Judgment and Sentence of the district court is **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2005), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

A. JOHNSON, J.: concurs.

1. 1999 OK CR 41, 991 P.2d 1032.

2. Majority opinion at 669; *Shrum,* 991 P.2d at 1036. The majority notes that McHam should not have been surprised by the instruction since the State set up a theory that McHam killed the victim in anger. *Shrum* held that, if the State requests instructions and the defendant objects, the trial court should give the instructions if (a)

LUMPKIN, V.P.J.: specially concurs.

CHAPEL, P.J. and LEWIS, J.: dissent.

CHAPEL, J., Dissenting.

¶ 1 McHam was charged with first degree murder. He claimed self-defense—that is, he admitted killing the victim but claimed that the killing was justified and therefore not a crime. The trial court determined that evidence supported an instruction on the lesser included offense of heat of passion manslaughter. The State did not request any lesser included offense instructions. McHam objected to the instruction. Under his theory of defense he had committed no crime at all, and he did not want jurors to have the option of convicting him for anything other than the crime of murder. The trial court gave the instruction anyway. Not surprisingly, jurors faced with the options of acquittal or punishment for a lesser homicide preferred to convict McHam of manslaughter. I agree with McHam's claim that, under these circumstances, jurors should not have had that option.

¶ 2 In *Shrum v. State,*[1] we unambiguously held that a defendant may waive instruction on lesser included offenses. As the majority states, "we held that if the trial court *sua sponte* 'proposes' lesser-offense instructions and the defendant objects to them, the defendant may affirmatively waive his right to such instructions and proceed on an 'all or nothing approach.'"[2] In upholding McHam's conviction the majority "clarifies" this holding. I see no need to clarify a perfectly clear statement of law. Either a defendant has a right to waive lesser included instructions or he does not. The majority explains that, under its "clarification" of *Shrum,* a defendant may adopt an "all or nothing" strategy but "the trial court is not bound by that strategy."[3] This defies logic. If the trial court is not required to honor the defendant's

the defendant is not surprised and (b) the instructions are supported by the evidence. This holding has nothing to do with McHam's claim that he wanted to waive instruction on lesser included offenses. The State never requested instructions on any lesser included offense, and surprise is not the issue.

3. Majority opinion at 670.

strategic decision to waive lesser included offenses, then the defendant has lost the ability to make that waiver.

¶ 3 I agree that trial courts have a responsibility to instruct the jury on all offenses supported by the evidence. However, I see no conflict between that responsibility and a defendant's right to choose a defense strategy rejecting lesser included offenses.[4] Our law clearly gave McHam the option to waive instruction on any lesser included offense without objection by the State, and he did so. The Court now refuses to recognize McHam's settled right to choose to defend only against the charged crime. It is true that *Shrum* limited the "all-or-nothing" defense to cases in which the State did not request lesser included offense instructions. A limitation is not the same as a negation. With this "clarification", the majority negates the possibility of an "all-or-nothing" strategy. Because I would preserve that strategic choice, I dissent.

LUMPKIN, Vice–Presiding Judge: Specially Concur.

¶ 1 In my separate writing to *Shrum*, I expressed concerns regarding this Court's approach to determining when jury instructions on lesser included offenses are necessary. 991 P.2d at 1037. The current opinion begins to correct the confusion created by *Shrum*. While this opinion still leaves a lot to rectify from *Shrum*, it is a good first step. It is my belief that if trials are to seek truth and justice, then they are not a place for mere gamesmanship. The trial judge should instruct on the law that is applicable in the case, and that includes lesser included offenses, i.e. ". . ., the commission of which is included in that with which he is charged, or of an attempt to commit the offense". 22 O.S.2001, § 916. *See also Shrum*, 991 P.2d at 1038. By doing so the judge not only follows the law but also fulfills the judge's oath of office.

LEWIS, J.: Dissent.

¶ 1 Because I find merit in Proposition 2, I respectfully dissent. The trial court exceeded its authority when it circumvented the defendant's "all or nothing" trial strategy by instructing on the lesser-related offense, over defense counsel's objection and without request from the prosecution.

¶ 2 Had the prosecution requested or indicated that it also wanted the jury instructed on the lesser-related offense, my opinion would be different. In *Shrum*, this Court recognized that a defendant could assert an "all or nothing" strategy. *Shrum v. State*, 1999 OK CR 41, ¶ 11, 991 P.2d 1032, 1036. This Court also recognized that the State may request instructions on lesser-related offenses. *Id.* A prosecutor must be an administrator of justice with the duty to seek justice, not just convictions. *See ABA Standards for Criminal Justice*, The Prosecution Function, § 3–1.2 (1992). With this duty comes the responsibility to ensure that a defendant is charged and tried with the goal of seeking justice.

¶ 3 During trial, circumstances may arise which require the prosecution to reevaluate its evidence and conclude that instructions on lesser related offenses are warranted, in the interest of seeing that justice is served. This duty should be on the prosecution, not on the trial court. Here, the prosecution wholly failed in its duty to give voice to justice, and it allowed the trial court to usurp the prosecution function.

¶ 4 I am of the opinion that the prosecution should be required to object to the all or nothing approach, swallow its pride, and ask that the trial court instruct on a lesser form of homicide, where the evidence supports the instructions. Otherwise, a defendant should be convicted of the crime for which he is being tried, or he should be acquitted.

---

4. Well before *Shrum* was decided, I suggested that a trial court was obligated to instruct on every lesser included offense supported by the evidence, unless the defendant waived that instruction and the State did not object to the waiver. *O'Bryan v. State*, 1994 OK CR 28, 876 P.2d 688, 690 (Chapel, J., specially concurring). That is exactly the situation here.